A94A1577. BROWNING et al. v. PACCAR, INC.
(448 SE2d 260)

BEASLEY, Presiding Judge.

In June 1988, 15-year-old Thomas Browning was riding as a passenger in a 1979 Peterbilt tractor-truck designed, manufactured, and sold as new by Paccar, Inc. Frank Browning, Thomas' uncle, was driving the Peterbilt pulling a trailer. At the same time, Jenkins was operating a pickup truck in a westerly direction on the same highway. Jenkins' pickup truck was involved in a violent collision with the Peterbilt when Jenkins, without signaling, attempted a left turn across the path of the Peterbilt. As a result, the Peterbilt overturned on its right side and caught fire, which was fueled by the contents of the fuel tank. Thomas Browning was trapped inside the Peterbilt as fire engulfed the vehicle. He and Jenkins sustained fatal injuries.

Browning's parents instituted this wrongful death action against Paccar and the administratrix of Jenkins' estate, seeking a recovery against Paccar on theories of strict liability and negligence. They assert in the complaint that Paccar designed, manufactured, and sold the Peterbilt as a new product in a defective, unsafe, and unreasonably dangerous condition, in that when the Peterbilt left the control of Paccar, it was unreasonably susceptible to having its fuel system breached and fuel ignited when involved in highway collisions.

Among other things, plaintiffs charge Paccar with negligence in

the configuration of the fuel and electrical systems, particularly the location of the fuel tanks and battery box in a known high-frequency impact area, outside the frame rails, unreasonably close to both occupants and ignition sources.

In his opening statement, Paccar's attorney remarked that the Peterbilt model truck involved in this collision was first made in the late 1950's; that at least 50,000 were made with the same fuel system, which has also been put in a newer model; that this is the only claim ever made against Peterbilt or Paccar for a post-collision fire; and that there has never been any kind of recall or government action taken against this fuel system.

Based upon his reconstruction of the accident, plaintiffs' engineering expert, Dr. Charles Benedict, testified that the fire started because the impact of the collision drove the bumper into the left front wheel, the left front wheel into the battery box, and the battery box into the fuel tank, thereby causing the fuel tank to be punctured by the battery box and the fuel to drain out and become ignited by electrical arcing from the battery box.

However, a bystander testified on behalf of Paccar that the fire began with a flame around the transmission in the area of the engine and then spread to the fuel tank after another bystander sprayed it with a fire extinguisher. Paccar's investigative engineer, Gilbert, testified that a fuel line to the left tank was sheared when the cab rolled over and that spilled fuel fed the fire after it started.

Paccar's expert in automotive engineering, Noble, and its product safety manager, Riggs, both testified on the basis of the physical evidence that the battery box did not puncture the fuel tank. Noble also testified that the design of the Peterbilt fuel system was reasonably safe and wholly appropriate.

After two days' deliberation and an "*Allen*" charge, the jury returned a verdict in favor of the defendant. Plaintiffs appeal the court's entry of judgment on the verdict and denial of their motion for new trial.

1. The first claimed error is the court's denial of plaintiffs' motion in limine. It sought to prohibit any reference or suggestion that the product has never been recalled or that no regulatory proceeding has ever been instituted against it.

(a) First, plaintiffs rely upon a line of cases applying the general rule that in a negligence action arising from a vehicular accident, the issue before the court is the negligence or non-negligence of the defendant at the time and place of the accident, and each transaction must be ascertained by its own circumstances. *Williams v. Naidu*, 168 Ga. App. 539, 540 (309 SE2d 686) (1983). Unlike the defendant-physicians' inadmissible evidence of "no prior suits" in *Williams*, the evidence in this case falls within an exception to this general rule which

*Williams* recognizes as it is described in *Gunthorpe v. Daniels*, 150 Ga. App. 113 (1) (257 SE2d 199) (1979). That is where similar occurrences or methods of acting or transactions tend to prove some fact of the case on trial. Such other matters might show knowledge of a defect, or causation, or prior existence of a dangerous or hazardous condition, or it might rebut a contention of impossibility. Id.

Here it is alleged that the design and manufacture of the vehicle caused the injury. If what was claimed as a dangerous defect were such, it would have occurred in the thousands of identical vehicles which had been produced upon the same design and by way of the same manufacturing process as the subject vehicle. The fact that none of such vehicles had been subjected to recall and Paccar had never been subjected to regulatory action with respect to the claimed defect despite the thousands of identical vehicles in use, tends to negate the allegation that the configuration was a dangerous design. All the vehicles shared a common design and manufacture, just as the 125 turkey dinners in *Carsten v. Wilkes Supermarket of Gwinnett County*, 181 Ga. App. 834 (353 SE2d 922) (1987), shared a common preparation process.

In the case of the turkey dinners, the evidence that no consumers attributed illness to them except plaintiffs was deemed relevant to show defendant's preparation of them was not negligent. Similarly, in this case of fuel and electrical system configuration on vehicles, the evidence that the customary methods for protecting the public from defective vehicles had not been instituted in connection with these vehicles was relevant to show defendant's design and manufacture was not negligent. Admission of the evidence did not violate OCGA § 24-2-2.

(b) Plaintiffs also argue that a recall or regulatory proceeding could not have occurred, in that there are no government standards applicable to the design and manufacture of fuel systems in tractor-trucks such as the Peterbilt.

Paccar presented evidence that even though there are no federal motor vehicle safety standards directly applicable to Paccar in its manufacture of the Peterbilt, a defect in the fuel system creating a safety hazard on the highways could result in regulatory action or a forced recall.

Evidence that there has been a recall is only admissible if there is first introduced some independent proof that the particular product in question suffers from the same defect. *Harley-Davidson Motor Co. v. Daniel*, 244 Ga. 284, 286 (2) (260 SE2d 20) (1979). On the other hand, the absence of a recall is not irrelevant where, as here, the manufacturer is engaged in mass production of a vehicle over a period of many years and the claim is that each vehicle suffered from the same design defect.

2. Plaintiffs contend that the court erred in: (1) refusing to admit evidence of other litigation against Paccar, (2) refusing to admit evidence of other litigation against various of Paccar's competitors, and (3) refusing to allow cross-examination of Riggs regarding Paccar's knowledge of the litigation against its competitors.

Evidence of this other litigation consisted of a copy of a complaint filed by Benton against Paccar in federal district court in 1975 and copies of reported decisions, primarily by federal circuit courts of appeal, in suits by Huff against White Motor Corporation and by the Maxeys and the Sodens against Freightliner Corporation. Judgments were entered against defendants in each suit.

(a) At trial, plaintiffs sought to question their expert Benedict about whether or not a manufacturer in exercising reasonable care in designing, manufacturing, and marketing a product would follow litigation concerning competitors' products that are similar in design. Paccar objected to Benedict's testifying concerning litigation involving other vehicles built by other manufacturers without a showing of substantial similarity. Plaintiffs then elicited testimony from Benedict concerning the similarities between this suit and the suit against Freightliner Corporation by the Maxeys and the similarities in the design of all the manufacturers' trucks. Paccar objected to plaintiffs' introduction of published court decisions in cases against the other manufacturers, because the statement of facts in each opinion is skeletal and Paccar would be unable to establish through cross-examination that the other cases are in fact dissimilar.

The court refused, not incorrectly, to allow plaintiffs to prove facts through the introduction of the court opinions. "Ordinarily the reviewing court does not discuss the facts of the case, save in so far as a discussion of the facts may be necessary in the determination of questions of law." *McCullough v. State*, 11 Ga. App. 612, 617 (5) (76 SE 393) (1912). "[A] judicial opinion should be admitted as substantive evidence of a similar accident only in the rarest of cases when no other form of evidence is available and then only with detailed limiting instructions." *Johnson v. Colt Indus. Operating Corp.*, 797 F2d 1530, 1534 (3) (10th Cir. 1986). There appears no reason that evidence of the other accidents could not have been adduced in another more complete form.

The court did allow plaintiffs to ask Benedict whether there had been complaints or litigation about defects in the outside-the-frame-rail gas tanks and designs prior to Paccar's assembly of this truck. When the court so ruled, plaintiffs stated that this was reasonably satisfactory. Their acquiescence in this ruling deprives them of the right to complain of it on appeal. *Upshaw v. Cooper*, 127 Ga. App. 690, 692 (1) (194 SE2d 618) (1972).

(b) Plaintiffs also requested that they be allowed to introduce the

complaint filed by Benton against Paccar to contradict the opening statement of Paccar's attorney that this is the only claim ever made against Paccar for a post-collision fire involving a Peterbilt truck. Benton's complaint also concerned a post-collision fire involving a Peterbilt truck. Initially, the court ruled, incorrectly, that Paccar had not opened the door to introduction of the complaint, but indicated a willingness to revisit this ruling.

In their initial cross-examination of Riggs, plaintiffs asked whether litigation against Paccar's competitors, which challenged the safety of the generic fuel system, had ever been brought to his attention. After Paccar objected, plaintiffs stated that they wanted to cross-examine the witness concerning the Benton case. The court adhered to its ruling that the complaint proved nothing, but it stated that plaintiffs could ask the witness if he had been informed of any litigation in the industry. Consequently, there is no merit in plaintiffs' contention that the court erred in restricting their cross-examination of Riggs concerning Paccar's knowledge of litigation against its competitors.

(c) On subsequent re-direct examination, Paccar asked Riggs whether any claims had been filed against Paccar before 1979 for a post-crash fuel-fed fire injury or death. He responded that there had been one claim but that the allegations were dissimilar. On further cross-examination, plaintiffs elicited testimony about the facts of the Benton case as shown by the complaint. Paccar elicited further testimony from Riggs that the claim in the Benton case was not similar to the claim here. Plaintiffs then sought to introduce the complaint. However, the court would not admit it in that the jury had heard enough about it.

The court's refusal to admit the complaint did not harm plaintiffs because they were permitted to engage in extensive cross-examination of Riggs concerning it and its contents. See *Rollins, Inc. v. Tennant Co.*, 170 Ga. App. 641, 642 (317 SE2d 659) (1984).

3. Plaintiffs contend that the court erred in excluding various United States patents for puncture-resistant fuel tank designs.

Their expert in mechanical engineering, Patton, testified that these patents, which were filed as early as the 1940's, represent attempts to avert post-crash fuel-fed fires and show that such fires are a recognized problem. When plaintiffs sought to admit the patents in evidence, Paccar raised a hearsay objection. The court refused to admit the patents because their introduction would require Paccar to call the patent holders as witnesses in order to engage in cross-examination, and plaintiffs had already shown by Patton's testimony that which it sought to show through this offer of proof. For the latter reason, plaintiffs were not harmed by the court's refusal to admit the patents themselves. See *Rollins*, supra.

4. Plaintiffs contend that the court erred in refusing to allow them to cross-examine Riggs regarding Paccar's failure to supplement its discovery responses after Riggs knew that he intended to materially change his deposition testimony.

If Paccar breached its duty to inform plaintiffs of Riggs' changed testimony prior to trial by supplementing its discovery responses and if this prejudiced plaintiffs in presentation of their case, the authorized sanction was a postponement or mistrial. *White v. Lance H. Herndon, Inc.*, 203 Ga. App. 580, 581 (5) (417 SE2d 383) (1992). Plaintiffs did not request such relief, although the court afforded an opportunity to seek some resolution. They thoroughly cross-examined Riggs concerning the conflict between his trial and deposition testimony. No error appears. See *Morrison v. Dept. of Transp.*, 166 Ga. App. 144, 147 (1) (303 SE2d 501) (1983).

5. Plaintiffs contend that the court erred in refusing to admit certain exhibits and allow them to be considered by the jury during its deliberations although these exhibits were used in evidence.

The exhibits consisted of a multi-page diagram and a computerized animation videotape prepared by Benedict to show his reconstruction of the accident. The jury viewed this diagram and videotape when they were used by Benedict to illustrate his testimony. It is not error to exclude such demonstrative evidence from the jury room. *McClure v. State*, 163 Ga. App. 236, 238 (3) (293 SE2d 496) (1982).

6. Plaintiffs contend that the court erred in excluding a videotape of an exemplar accident.

This videotape was of an accident involving an International Harvester truck in which angular steps hanging down from the cab penetrated its fuel tank. Plaintiffs offered this videotape to show that when one of these generic fuel systems is involved in a frontal collision, the fuel tanks are driven backward. In the accident involving the International Harvester, both the right and left fuel tanks were damaged, but only the left fuel tank leaked fuel. Plaintiffs asserted that there was no fire because the battery box was not side-mounted next to the fuel tank outside the frame rails but rather behind the cab and therefore there was no electrical problem that caused the fuel to ignite. The purpose was to show a safe alternative and to confirm that the Peterbilt design was foreseeably defective. The court ruled that Benedict could testify to these things but that plaintiffs could not show the videotape.

Admissibility of evidence is a matter which rests largely in the sound discretion of the trial court. *Ford Motor Co. v. Stubblefield*, 171 Ga. App. 331, 338 (4) (319 SE2d 470) (1984). It was not an abuse of discretion to disallow the playing of the videotape depicting a dissimilar product (battery elsewhere), to prove a different result from a similar occurrence, particularly when testimony established the same

facts.

7. Plaintiffs contend that the court erred in refusing to give its request to charge on a manufacturer's duty regarding production of a vehicle with a crashworthy design.

The trial court instructed the jury on the requested legal principle but omitted from the charge those portions of the request which contained argumentative statements of fact. We find no error. See *Smith v. Odom*, 194 Ga. App. 615 (2) (391 SE2d 453) (1990); *Southern R. Co. v. Oliver*, 177 Ga. App. 729, 731 (1) (341 SE2d 270) (1986).

8. Plaintiffs contend that the court erred in refusing to charge the jury that a manufacturer cannot limit or exclude its liability for producing a defective product which causes injury by giving the purchaser a choice between optional features.

In support of this request to charge, plaintiffs cited paragraph (3) of subsection (b) of OCGA § 51-1-11. Paragraph (1) imposes "strict liability" upon the manufacturers of new personal property for injury to persons and property irrespective of privity. *Ellis v. Rich's, Inc.*, 233 Ga. 573, 577 (212 SE2d 373) (1975). Paragraph (3) states that "[a] manufacturer may not exclude or limit the operation of this subsection." Paccar did not seek to do this. Although Paccar's attorney did remark in his opening statement that purchasers of Peterbilt trucks have a number of options as to the location of the battery box, and Riggs did testify that the purchaser can have the battery box moved to any number of places depending on the use to which the truck is to be put, Paccar's defense was that the location in this instance is not defective, unsafe, or unreasonably dangerous. It has not sought to exclude or limit the operation of OCGA § 51-1-11 (b). The request to charge was not adjusted to the evidence or to the theory of the case.

Moreover, it combined argumentative facts with a legal principle, as did the request to charge reviewed in Division 7, supra.

9. Plaintiffs contend that the court erred in refusing to give their request to charge the jury that if a product cannot be made reasonably safe but it is nevertheless desirable that the product be manufactured and distributed because of its utility, it is the duty of the manufacturer to appropriately warn of any dangerous condition which is likely to be encountered.

At trial, plaintiffs cited only federal authority in support of this request. On appeal, they rely upon *Center Chem. Co. v. Parzini*, 234 Ga. 868 (218 SE2d 580) (1975) and *Pepper v. Selig Chem. Indus.*, 161 Ga. App. 548 (288 SE2d 693) (1982). *Center Chem.* recognizes that "[m]any products can not be made completely safe for use and some can not be made safe at all. However, such products may be useful and desirable. If they are properly prepared, manufactured, packaged and accompanied with adequate warnings and instructions, they can not be said to be defective." 234 Ga. at 870 (4). *Pepper* recognizes

that a manufacturer may be strictly liable for any defect in the product which is the proximate cause of the product user's injury and that a manufacturer's failure to warn of the dangers in using a product may constitute a defect. 161 Ga. App. at 550 (3).

The gravamen of the complaint in this case is that the Peterbilt's fuel and electrical systems should have been configured differently in order to be reasonably safe, not that the systems could not be made reasonably safe. In addition, it does not appear from the evidence that Paccar's failure to warn of the dangers in using the Peterbilt could be considered the proximate cause of Browning's death. Thus, this theory of recovery was not sustained by the evidence.

10. The court did not abuse its discretion in denying plaintiffs' motion for new trial on the general grounds. *Kendrick v. Kendrick*, 218 Ga. 460 (1) (128 SE2d 496) (1962).

11. The court's direction of a verdict in favor of Paccar on the issue of punitive damages is moot because the jury returned a verdict in favor of Paccar on the issue of liability. *Wendlandt v. Shepherd Constr. Co.*, 178 Ga. App. 153, 155 (1) (342 SE2d 352) (1986).

*Judgment affirmed. Andrews and Johnson, JJ., concur.*

DECIDED AUGUST 23, 1994.

*William S. Stone, Foy R. Devine*, for appellants.

*Neely & Player, Edgar A. Neely, Jr., Richard B. North, Jr.*, for appellee.