A96A2233. DUCKWORTH v. THE STATE.
(477 SE2d 336)

ELDRIDGE, Judge.

On July 25, 1995, at approximately 10:00 p.m., Deputy Sheriff John Daniel of the Worth County Sheriff's Department was on his way to serve a warrant and was driving on Pope Street, approaching the intersection with Westberry Street, when he saw a white car run the stop sign at a high rate of speed. Daniel put on the blue light and the siren, but the driver failed to stop. The deputy chased the car south on Westberry for two blocks before the car made a left turn onto Railroad Street and then turned into a driveway. Before the vehicle came to a stop, the driver had the door open, was exiting, and Daniel believed that the driver was about to flee. Appellant staggered as he approached Daniel and had a wild-eyed look. At this point in time, no one else was present when Daniel first asked appellant to produce his driver's license. When asked if he had a license, appellant answered, "No." About this time, appellant's brother, Brian, and his grandmother appeared. Daniel asked appellant if the license was in suspension, and appellant answered, "No." Daniel heard one of the relatives say that the license was in suspension. Appellant's speech was slurred, he had a strong odor of alcohol on his breath, and his eyes appeared bloodshot and glassy. Deputy Daniel instructed appellant to turn around and place his hands on the hood of the patrol car; appellant started to comply by turning and putting his hands on the car, but immediately turned back facing the deputy and leaned back against the car with his hands supporting himself. Appellant then asked Deputy Daniel if the deputy was going to take appellant home; the deputy replied that he was arresting appellant and instructed appellant to turn around, face the car, and put his hands on the car. The relatives were standing behind Daniel, who was between them and appellant; the relatives said that Daniel shoved appellant off balance onto the car's hood before attempting to handcuff appellant. When Daniel reached for appellant's left hand to cuff him, appellant spun around and slammed the deputy against the hood of the car, bending him over it, and began hitting the deputy. Appellant's brother came to the deputy's rescue and attempted to pull appellant off; a struggle ensued, and the deputy got out his

metal flashlight and was able to strike appellant with two blows on the head, stunning appellant so that he and his brother fell to the ground. From the blows to his face, Daniel's glasses were broken and knocked off. Although the brother believed that he had control of appellant, he had been unable to pull appellant off the deputy. Because of appellant's wild and dangerous conduct, the deputy had to strike appellant twice on the head to subdue him, and one of the blows broke the brother's finger when he put his hand up to ward off the blow. While appellant sat on the ground in a daze, Daniel hand-cuffed him and called for backup. After the backup arrived and appellant was placed in a police vehicle, appellant said, "Yeh, y'all got me, but look how many motherfuckers it took." Appellant, after being given his implied consent warnings, refused to take any test for alcohol. Appellant was bleeding from a gash in his head from the blows and was taken to the hospital for treatment. Upon arrival, appellant refused to allow anyone either to examine or to treat him for the bleeding and had to sign a hospital waiver and release. Appellant never at any time produced a driver's license. After appellant was under arrest, no field sobriety test was attempted.

Appellant was indicted for felony obstruction of a peace officer, driving under the influence, failure to stop at a stop sign, and driving without a license. Jury trial began on February 29, 1996, and on March 1 a verdict was returned, finding him guilty of the lesser included offense of misdemeanor obstruction, and guilty as charged on all other counts. On June 4, 1996, appellant was sentenced. On June 11, appellant filed his notice of direct appeal.

1. Appellant's enumerations of error 1 through 3 are that the trial court erroneously granted objections to his cross-examination of Deputy Daniel, regarding any interest or bias that Daniel may have had in the outcome of the trial, because, if his use of force was excessive, then he could be subject to prosecution, suit, and dismissal so that such considerations would constitute civil and penal interests. However, the record reveals that appellant did, in fact, cross-examine Daniel regarding such issues, so that denial of specific questions on the subject did not bar any and all inquiry into the subject; Daniel's basic response was that he was just doing his job and that he had no interest. Daniel was cross-examined regarding such interest in the outcome of the prosecution. The trial court did not abuse its discretion in precluding specific questions, while allowing a general cross-examination of the subject, that included the specific area sought to be touched upon by the prohibited questions.

OCGA § 24-9-64 reads: "The right of a thorough and sifting cross-examination shall belong to every party as to the witnesses called against him. If several parties to the same case have distinct interests, each may exercise this right." See *Lunday v. Thomas*, 26

Ga. 537, 544 (1) (1858).

The Supreme Court has held that it is the duty of the trial court "to allow a searching and skillful test of [the witness's] intelligence, memory, accuracy and veracity. As a general rule, it is better that cross-examination should be too free than too much restricted. This is a matter that necessarily belongs to and abides in the discretion of the court. . . . There must be allowed some degree of skill, if not sharpness, in conducting cross-examinations, because a witness, however fair and honest and truthful, may not be careful enough, and it is to the interest of justice to expose the blundering of a witness, as well as his willful departures from veracity. A jury ought to be made to know what character of mind they have before them on the witness-stand, whether they have a careful, cautious witness, or one who is disposed to take things on trust. That is quite essential. But the court is there, watching the proceedings, and acquainted with all the surroundings; it is proper to leave such a question to the discretion of the court. . . ." *Harris v. Central Railroad*, 78 Ga. 525, 534 (3 SE 355) (1887); see also *Ledford v. State*, 89 Ga. App. 683, 684-685 (1) (80 SE2d 828) (1954); *Carroll v. Hill*, 80 Ga. App. 576, 580 (3) (56 SE2d 821) (1949); *Loomis v. State*, 78 Ga. App. 153, 157-158 (3) (51 SE2d 13) (1948).

" 'Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions in memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness. . . . A more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand. The partiality of a witness is subject to exploration at trial, and is "always relevant as discrediting the witness and affecting the weight of his testimony." [Cit.] We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. *Greene v. McElroy*, 360 U. S. 474, 496 (1959).' (Footnote omitted.) *Davis v. Alaska*, 415 U. S. 308, [316, 317 (94 SC 1105, 39 LE2d 347) (1974)]." *Hines v. State*, 249 Ga. 257, 259-260 (2) (290 SE2d 911) (1982).

"The extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court. It may exercise a reasonable judgment in determining when the subject is exhausted. (Cits.)" *Alford v. United States*, 282 U. S. 687, 694 (511 SC 218, 75 LE2d 624) (1931).

"Although the appellant is entitled to a thorough and sifting cross-examination of a witness, the scope of such cross-examination is within the sound discretion of the trial court." *White v. State*, 253 Ga. 106, 110 (4) (317 SE2d 196) (1984); accord *Stone v. State*, 250 Ga. 718, 719 (300 SE2d 500) (1983); *Hines v. State*, supra at 260; *Scott v. State*, 178 Ga. App. 222, 224 (3) (343 SE2d 117) (1986).

"Defendant 'had the right to a thorough and sifting cross-examination of any witness called against him. [Cit.] However, the extent of cross-examination can be curtailed if the inquiry is not relevant or material, and such restriction lies within the discretion of the trial court which will not be disturbed on appeal unless manifestly abused. [Cits.]' (Cit.) Under the circumstances of the case sub judice, we find no manifest abuse of discretion in the trial court's limitation of defense counsel's cross-examination of the State's [witness]." *Fletcher v. State*, 197 Ga. App. 112 (1), 113 (397 SE2d 605) (1990); *Stevens v. State*, 213 Ga. App. 293, 294 (2) (444 SE2d 840) (1994).

The extent of limitation on the scope of cross-examination " ' "necessarily must rest largely within the discretion of the trial judge in order to keep the questioning within reasonable bounds. It is error only when this discretionary authority is abused. (Cits.) The extent of cross-examination can be curtailed if the inquiry is not relevant nor material. (Cits.)" (Cit.)' *Harris v. State*, 168 Ga. App. 159, 160 (2) (308 SE2d 406) [(1983)]." *Williamson v. State*, 186 Ga. App. 589, 590 (2) (367 SE2d 863) (1988); *Samuels v. State*, 174 Ga. App. 684, 685 (2) (331 SE2d 62) (1985); *Fitzgerald v. State*, 166 Ga. App. 307, 310 (7) (304 SE2d 114) (1983).

This Court finds no manifest abuse of discretion.

2. The fourth enumeration of error contends that the trial court erred in limiting the cross-examination of the State's witness by not allowing the use of an alleged prior inconsistent statement, which appellant refused to tender into evidence. Appellant sought to read a portion of the police report to the jury without first admitting the entire report into evidence, alleging that the report contained a prior inconsistent statement. Since appellant would not tender the report into evidence, the prosecutor objected to the reading of such alleged statement and cross-examination regarding it; the trial court prohibited cross-examination regarding the statement absent admission of the entire report into evidence, with a proper foundation having first been laid.

OCGA § 24-9-83 reads in part: "[a] witness may be impeached by contradictory statements previously made by him as to matters relevant to his testimony and to the case. Before contradictory statements may be *proved* against him, . . . the time, place, person, and circumstances attending the former statements shall be called to his mind with as much certainty as possible. If the contradictory state-

ments are in writing and in existence, they shall be shown to him or read in his hearing. *To lay this foundation,* the witness may be recalled at any time." (Emphasis supplied.)

To lay a foundation for impeachment, the alleged prior inconsistent statement must be proved to have been made, or if in writing, then tendered into evidence, it is admissible as relevant and material evidence for such purpose. *Andrews v. State,* 118 Ga. 1 (43 SE 852) (1903); *Tommie v. State,* 158 Ga. App. 216 (279 SE2d 510) (1981). Evidence, otherwise inadmissible, becomes admissible to prove the existence of a prior inconsistent statement. *Francis v. State,* 266 Ga. 69 (463 SE2d 859) (1995); *Charlton v. State,* 217 Ga. App. 842 (459 SE2d 455) (1995). If a proper foundation has been laid for the admission of a prior inconsistent statement, then such evidence becomes substantive evidence for all other probative evidentiary purposes. *Gibbons v. State,* 248 Ga. 858 (286 SE2d 717) (1982). A witness cannot be impeached by a contradictory statement without first laying the required foundation and placing the statement into evidence. *Morris v. State,* 228 Ga. 39 (184 SE2d 82) (1971); *Williams v. Turner,* 7 Ga. 348 (1849). If the appellant fails to place the prior inconsistent statement into evidence, then it is not error to limit cross-examination on such subject. *Truitt v. State,* 168 Ga. App. 616, 618 (309 SE2d 895) (1983).

The trial court did not err in limiting cross-examination under the circumstances in the case sub judice.

3. Appellant enumerates error in denying the motion for a directed verdict on driving without a valid driver's license and on obstructing an officer, as well as a direct appeal that "a rational trier of fact would not have found Defendant guilty." These enumerations of error are considered together, because they are controlled by the same standard.

"A directed verdict of acquittal in a criminal case is authorized only where there is no conflict in the evidence and the evidence introduced with all reasonable deductions and inferences therefrom shall *demand* a verdict of acquittal or 'not guilty.' When a conviction is upheld on appeal because the evidence is such that a rational trier of fact could find the appellant's guilt beyond a reasonable doubt, according to the standard in *Jackson v. Virginia,* [443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979)], it cannot possibly be said the evidence *demanded* a verdict of acquittal." (Citation and punctuation omitted.) *Kirkland v. State,* 211 Ga. App. 805, 807 (1) (440 SE2d 542) (1994); *Buchanan v. State,* 215 Ga. App. 143, 144-145 (449 SE2d 660) (1994); *Clark v. State,* 207 Ga. App. 50, 51 (1) (427 SE2d 43) (1993); see also *Taylor v. State,* 252 Ga. 125, 126 (1) (312 SE2d 311) (1984).

"A trial court must grant a motion for directed verdict unless, viewing the evidence in the light most favorable to the prosecution, a

rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. [Cit.]" *Lee v. State*, 247 Ga. 411, 412 (6) (276 SE2d 590) (1981); see also *Miller v. State*, 201 Ga. App. 108, 109 (1) (410 SE2d 328) (1991); *Jones v. State*, 201 Ga. App. 102, 103-104 (2) (410 SE2d 199) (1991); *Kearney v. State*, 184 Ga. App. 64, 66 (360 SE2d 633) (1987).

"The obligation to weigh the evidence and to determine witness credibility rests with the jury. This court considers only the sufficiency of the evidence." (Citation and punctuation omitted.) *Conner v. State*, 205 Ga. App. 564, 568 (5) (422 SE2d 872) (1992); *Walsh v. State*, 220 Ga. App. 514, 515-516 (3) (469 SE2d 526) (1996).

"On appeal of a criminal conviction, the appellant no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility." (Citation and punctuation omitted.) *Buchanan v. State*, supra at 144.

Viewing the evidence in the light most favorable to the jury's verdict, there exists ample evidence on each charge from which a rational trier of fact could determine the guilt of appellant pursuant to *Jackson v. Virginia*, supra, beyond a reasonable doubt.

4. Appellant's ninth enumeration of error is that the trial court erred in charging on "driving without a license on the person" when the charge was "driving without a valid license."

The trial court gave a full charge on OCGA § 40-5-20, the offense set forth in the indictment. The court went on to charge "[a]nd when operating a motor vehicle, every person shall have his driver's license in immediate possession at all times." This was not given as either an additional charge or as an included charge, but as a clarification of the charge already given and in conformity with OCGA § 40-5-29. Such a charge was a rational explanation of the duty of an operator of a motor vehicle not only to have a valid driver's license, but also to have it with the person while operating the motor vehicle and to produce it upon demand. Appellant's failure to produce the license upon demand gave rise to a rebuttable, reasonable inference that he did not have a valid license.

This Court, in *Gibson v. State*, 187 Ga. App. 769, 771 (4) (371 SE2d 413) (1988), held under identical facts that a charge to the jury on OCGA § 40-5-29 was proper when the defendant was being tried under OCGA § 40-5-20, as such charge was a correct statement of the law, adjusted to the evidence, and did not constitute error.

There was no error in the charge of the trial court.

*Judgment affirmed. Pope, P. J., and Andrews, J., concur.*

DECIDED OCTOBER 10, 1996 —
RECONSIDERATION DENIED OCTOBER 17, 1996 — 

*James N. Finkelstein*, for appellant.
*C. Paul Bowden, District Attorney*, for appellee.