A99A1980, A99A2150. CROSBY et al. v. COOPER TIRE &
RUBBER COMPANY; and vice versa.
(524 SE2d 313)

ELDRIDGE, Judge.

Jan D. Crosby, as the widow of Bobby Ira Crosby, as the administratrix of his estate, as the mother and next friend of Kelly L. Crosby, a minor, and as an individual on her own behalf, sued Cooper Tire & Rubber Company ("Cooper Tire") for negligent design, negligent manufacture, failure to warn, violation of the implied warranty of merchantability, and strict product liability for a defective consumer product, the left rear tire, which allegedly blew out and allegedly caused the family Ford Bronco II to roll over. On November 10, 1997, the case went to trial before a jury. On November 19, 1997, the jury returned verdicts in favor of Cooper Tire and against Mrs. Crosby.

On June 16, 1991, Bobby Crosby drove the Bronco 70 miles to his parents' home. Suddenly a loud popping sound, like a shotgun, occurred. Mr. Crosby seemed to lose control of the Bronco. The vehicle jerked to the right, turned sideways, and flipped over. Immediately prior to Mr. Crosby's loss of control of the Bronco, the testimony was that the rubber exterior of the left rear tire tore open with an explosive, shotgun-like sound. The left rear tire had allegedly blown out. Mr. Crosby was killed, and Mrs. Crosby and Kelly were seriously injured.

Less than a month prior to the rollover, Mrs. Crosby experienced shimmying or shaking in the Bronco. She took the vehicle in for service. The right rear tire was replaced as a result of failure, and the remaining tires were rotated and balanced, including the tire placed on the left rear. The shaking problem stopped. Mrs. Crosby thought that the shaking of the vehicle was caused by problems of tire balance, need for rotation, or misalignment. On Friday, June 14, 1991, Mrs. Crosby drove the Bronco and noticed the vehicle was again shaking. The Crosbys believed that the shaking again was caused by misalignment of the tires.

The tire that allegedly blew out was an Atlas A/W radial manufactured by Cooper Tire. In 1990, Cecil Bowen sold this tire as a part of a set of four to Mr. Crosby. Shortly after the purchase of the set, one of the tires had to be replaced, because the tire had a knot or separation, which was observable only when the vehicle was on the grease rack.

*Case No. A99A1980*

1. Mrs. Crosby's first enumeration of error is that the trial court erred in instructing the jury to disregard her expert's testimony as to

how the tire failure began and progressed. We agree.

At trial, Mrs. Crosby's expert witness testified on direct examination, without objection, that a split in the inner liner of the tire occurred after the radial belts in the tire separated. The location of the split corroborated his opinion that the separation in the tire belts was due to a manufacturing defect which caused the split and that the split did not cause the belt separation from rollover impact. The expert went on to testify without objection that, immediately prior to the rollover, a "rapid air out" occurred from a burst bubble in the tire and that this air loss occurred in only one to two seconds. Rapid deflation in the left rear tire caused the tire to become softer and allowed the tire to steer to the right and have greater compliance so that the vehicle physically shifted farther in a turn and oversteered to the right, affecting the stability of the vehicle. When the tire deflated, this shift caused the driver to believe that the vehicle had changed direction, and the driver reacted by a steering change, causing a rollover.

At the end of the direct examination of this expert, the trial court took a recess. At that time, Cooper Tire raised objections that this expert witness testified to opinions not previously divulged either in two depositions or in answers to interrogatories regarding the two-second tire deflation and the reason why the impact did not cause the radial belt separation. Cooper Tire moved for the trial court to strike such testimony and to instruct the jury to disregard such opinion testimony. The trial court granted the motion to strike and instructed the jury to disregard that portion of plaintiff's expert's opinion.

(a) Cooper Tire failed to make its objections to the admission of plaintiff's expert's testimony contemporaneously with the allegedly objectionable testimony and thereby waived such grounds to object. See *Goodtitle v. Roe*, 20 Ga. 135, 140 (4) (1856); *Burtine v. State of Ga.*, 18 Ga. 534, 537 (1) (1855); *Nashville, Chattanooga &c. R. v. Ham*, 78 Ga. App. 403, 408 (1) (50 SE2d 831) (1948).

In this case, Cooper Tire moved to strike testimony as a discovery abuse sanction after the testimony had been given without objection and at the completion of the direct examination of the expert witness. The trial court erroneously granted such motion, striking the evidence and instructing the jury accordingly. Like any other objection, a motion to strike must be made contemporaneously with the objectionable testimony, or a waiver occurs. See *Sharpe v. Dept. of Transp.*, 267 Ga. 267, 270-271 (2) (476 SE2d 722) (1996); see also *Dept. of Transp. v. Wallace Enterprises*, 234 Ga. App. 1, 4 (5) (505 SE2d 549) (1998).

(b) Exclusion of relevant and material evidence from trial is an inappropriate remedy for curing a discovery omission or abuse. The appropriate remedies for discovery abuse are (1) postponement of

trial or recess of trial in progress, pending action to procure rebuttal evidence, or (2) a mistrial, if there is no practical opportunity to make discovery and to obtain rebuttal evidence. *White v. Lance H. Herndon, Inc.*, 203 Ga. App. 580, 581 (5) (417 SE2d 383) (1992); *Hanna Creative Enterprises v. Alterman Foods*, 156 Ga. App. 376, 379 (2) (274 SE2d 761) (1980); *Jones v. Atkins*, 120 Ga. App. 487, 490-491 (2) (171 SE2d 367) (1969); *Nathan v. Duncan*, 113 Ga. App. 630, 641 (7) (149 SE2d 383) (1966).

Such abuse of the trial court's discretion in excluding this expert's testimony as to a manufacturing defect and causation is harmful error requiring reversal and remand for retrial.

> The trial court simply did not have authority or latitude to grant [Cooper Tire's] motion to strike [Crosby's] expert's [new] testimony. The trial court's judgment must therefore be reversed for a new trial so that a jury may consider [Crosby's expert's] testimony.

*Hunter v. Nissan Motor Co.*, 229 Ga. App. 729, 730 (1) (494 SE2d 751) (1997).

Since the other enumerations of error raised in the instant appeal and cross-appeal are likely to again arise on retrial, this Court will also address them. Further, many of the issues are based upon the sound exercise of the trial court's discretion, which may change upon retrial before another trial judge. See *Davis v. Glaze*, 182 Ga. App. 18, 21 (6) (354 SE2d 845) (1987).

2. Crosby contends that the trial court erred in excluding Cooper Tire's admissions as to what types of tire failures are caused by manufacturing defects. We agree in part.

Cooper Tire's adjustment records are not hearsay but were admissions against interest of a corporation made through its agents and produced by such corporation through discovery. See *Gorlin v. Halpern*, 184 Ga. App. 10, 15 (5) (360 SE2d 729) (1987), rev'd on other grounds, *Burgess v. Gorlin*, 258 Ga. 127 (365 SE2d 405) (1988). An admission against interest by a party is original evidence and is admissible as evidence as to the issue of liability. *Cannon v. Rithmire*, 156 Ga. App. 360, 361-362 (2) (274 SE2d 746) (1980).

(a) Since there was a material issue of fact as to whether the radial belting separated because of a manufacturing defect or impact in a tire with 30,000 to 40,000 miles of wear, the documents from Cooper Tire's adjustment process in general were relevant and material to show as to all tires, as a matter of causation, the difference between customer fault, i.e., service abuse such as impact damage, under- or over-inflation, or road hazard damage, or a manufacturing defect, i.e., a problem with workmanship and materials, and the fre-

quency of such manufacturing defects occurring after 30,000 to 40,000 miles of use. Limiting instructions must be given to the jury.

(b) Further, such adjustment documents were relevant, material, and admissible to demonstrate that the same model tires with prior or subsequent serial numbers from the same manufacturing plant had substantially similar manufacturing defects in either workmanship or materials or that such model tire had whatever incidence of manufacturing defects as compared with overall production of such tire. *Browning v. Paccar, Inc.*, 214 Ga. App. 496, 498 (1) (448 SE2d 260) (1994); *Carsten v. Wilkes Supermarket &c.*, 181 Ga. App. 834 (1) (353 SE2d 922) (1987); *Gunthorpe v. Daniels*, 150 Ga. App. 113 (1) (257 SE2d 199) (1979).

(c) Prior similar manufacturing defects would also be admissible to show defects, notice, prior knowledge and causation and for purposes of punitive damages. See *Mack Trucks v. Conkle*, 263 Ga. 539, 544 (3) (436 SE2d 635) (1993); *Skil Corp. v. Lugsdin*, 168 Ga. App. 754, 755-756 (1) (309 SE2d 921) (1983); *Gunthorpe v. Daniels*, supra. However, when admitted for these purposes as prior substantially similar defects, the foundation must be laid that such occurrences were with the same or similar model steel belted tires, made with the same or similar materials and manufacturing processes, and having substantially similar defects. This does not mean that the defects, tires, or occurrences must be identical, but only sufficiently substantially similar to be probative so that a jury can reasonably draw an inference of defect, causation, dangerousness, knowledge, producing the tire failure, or failure to warn. *Mack Trucks v. Conkle*, supra; *Gen. Motors Corp. v. Moseley*, 213 Ga. App. 875, 877-878 (1) (447 SE2d 302) (1994); *Hayes v. Gary Burnett Trucking*, 203 Ga. App. 693, 694 (1) (417 SE2d 676) (1992), overruled on other grounds, *Patterson v. Lauderback*, 211 Ga. App. 891, 893 (440 SE2d 673) (1994); *Carlton Co. v. Poss*, 124 Ga. App. 154, 155 (183 SE2d 231) (1971). It is within the trial court's sound discretion to determine whether the prior similar occurrences or tire failures are sufficiently substantially similar to allow the admission of such evidence; this means a continuum of admissible, substantially similar occurrences, where at one extreme the occurrences were the same and at the other extreme the occurrences were barely sufficient to be substantially similar for admission so as not to be an abuse of discretion. *Skil Corp. v. Lugsdin*, supra at 756; *Carlton Co. v. Poss*, supra; *Wright v. Dilbeck*, 122 Ga. App. 214, 216-217 (4) (176 SE2d 715) (1970).

3. Crosby contends that the trial court erred in excluding Cooper Tire's admissions of the relationship between tire failure and loss of vehicle control and the danger of tire vibration. We agree.

(a) To the extent that there was a prior recall of this model steel belted radial or models similar in design, materials, or manufactur-

ing process so as to be probative, such recall would be admissible. *Harley-Davidson Motor Co. v. Daniel*, 244 Ga. 284, 286 (2) (260 SE2d 20) (1979).

> The recall letter is admissible as long as there is first introduced some independent proof that the particular product in question suffered from the same defect. . . . [I]t is relevant on the question whether the defect was present when the [tire] left the manufacturer. [Cits.]

Id. at 287. It also may be admissible for other purposes.

(b) In this case, Crosby seeks to use recalls of other brands and types of tires conducted by Cooper Tire, both prior to and after the manufacture of the subject tire, not to prove a defect in this particular tire but to negate the Cooper Tire defenses that driving error caused the rollover or that product misuse caused the rollover by showing that Cooper Tire warned their dealers, but not their users, that tire vibrations were dangerous and that separation of radial belting leads to loss of vehicle control and rollover.

Product misuse did not relieve the manufacturer from liability for a defective product when such misuse was known by the manufacturer or was reasonably foreseeable by the manufacturer, as alleged in this case. See *Talley v. City Tank Corp.*, 158 Ga. App. 130, 137 (279 SE2d 264) (1981). Thus, evidence of the knowledge by Cooper Tire that tire vibration is dangerous and that Cooper Tire warned its dealers of this goes to the issue of foreseeability of the danger from tire vibration and of product misuse by users in continuing to drive with vibrating tires. This knowledge of anticipated driver misuse in turn gave rise to the duty to warn users of the danger from vibrating tires. Id.

Thus, the redacted recall or other related documents would be admissible to prove a failure to warn, with proper limiting instructions to the jury as to what the evidence may and may not be used to prove.

4. Crosby's fourth enumeration of error is that the trial court erred in precluding impeachment of Cooper Tire's expert witness, Stephen Arndt, with inconsistent prior opinions based upon testing by his company which he considered in reaching his opinion in the case. This was a discretionary ruling that the trial court made as to the proper use of impeachment.

(a) This is not a factual situation in which the interest, attitude, and feelings of the witness toward Crosby or Cooper Tire came into play. OCGA §§ 24-9-64; 24-9-68. The fact that Arndt & Associates' employees in different cases reached different opinions for different clients as to the cause of a rollover in a Bronco with a tire blowout

does not demonstrate bias or interest; if anything, it demonstrates impartiality. In this case, the trial judge, in his sound discretion, properly limited cross-examination to exclude opinions reached in another case by employees or co-workers. See *Duckworth v. State*, 223 Ga. App. 250, 252 (477 SE2d 336) (1996).

(b) If Cooper Tire's accident reconstruction expert Arndt did not take part in the prior case for the injured client, Walsh, where testing was performed to demonstrate that a blowout leads to rollover as causation so as to possess personal knowledge of such tests, then the trial court properly excluded cross-examination regarding the opinions of others, because such alleged prior contradictory opinion as to causation by Arndt's co-workers would not be a prior statement or opinion of the witness for purposes of impeachment by a prior contradictory opinion of Arndt's. OCGA § 24-9-83. See *Waszczak v. City of Warner Robins*, 221 Ga. App. 528, 530 (2) (471 SE2d 572) (1996). Different expert witnesses can come to divergent opinions based upon the same facts.

(c) However, such evidence of the prior opinions by his colleagues could be admitted to disprove or refute Arndt's own testimony as to causation in this case in rebuttal as impeachment after the defense completes its case. OCGA § 24-9-82. But to do so, Crosby must first lay a foundation showing sufficient substantial similarity between the prior case and this case to be probative and, second, must also show an exception to the hearsay rule for the admission of the prior expert opinion prepared by a non-witness, unless such colleagues testify, because such conflicting opinion of non-witnesses would become substantive evidence in the case. *Gibbons v. State*, 248 Ga. 858, 863 (286 SE2d 717) (1982); see also *Mack Trucks v. Conkle*, supra; *Gen. Motors Corp. v. Moseley*, supra at 878.[1]

In this case, the purpose of introducing such testimony would be to disprove Arndt's opinion as to causation by using other expert opinion, but also to discredit him by showing that such opinion as to causation was rendered by his own co-workers and employees in unrelated cases.[2] See *Wesleyan College v. Weber*, 238 Ga. App. 90 (517

[1] *Jackson v. Ensley*, 168 Ga. App. 822, 827-828 (1) (310 SE2d 707) (1983), held that the prior contradictory opinion of a lay witness could be introduced for the limited purpose of impeachment, but that the trial court should instruct the jury that the prior opinion was admitted for the limited purpose of impeachment of that witness. See also *Shropshire v. State*, 226 Ga. App. 669, 670-671 (487 SE2d 384) (1997). The failure to instruct as to the limited purpose of its admission will not require a new trial. See *Jackson v. Ensley*, supra at 828; *Pound v. Medney*, 176 Ga. App. 756, 761 (2) (337 SE2d 772) (1985).

[2] Since the other Arndt & Associates co-workers or employees could be called to testify about *Walsh v. Ford Motor Co. &c.*, rather than *Crosby v. Cooper Tire*, then OCGA § 9-11-26 (b) (4) (B) and (C) would not have to be satisfied, because such other experts were not Cooper Tire's trial preparation experts and were not called as witnesses; however, if these co-workers of Arndt worked on both cases and are to testify about what they did for Cooper

SE2d 813) (1999).

5. Crosby's last enumeration of error is that the trial court erred in precluding expert testimony as to the public's awareness of danger from tire vibration. This is an area where the trial court has discretion to admit or deny expert opinion testimony when the trial court believes that the evidence would be a waste of time, cause undue delay, result in needless presentation of cumulative evidence, or be unhelpful, confusing, or misleading. See *Barlow v. State*, 270 Ga. 54, 56 (507 SE2d 416) (1998); *Hicks v. State*, 256 Ga. 715, 720-721 (13) (352 SE2d 762) (1987).

Testimony by a human factors expert as to the general public's awareness of the dangers from tire defects or that vehicle vibration may be life-threatening is not relevant in Crosby's case-in-chief and only became relevant as rebuttal evidence after Cooper Tire raised through evidence in the defense's case-in-chief that Mr. Crosby was contributorily or comparatively negligent in continuing to drive with the vibrating tire and that his conduct was the cause of the rollover.

The expert conducted a survey as to the general public's awareness of danger from a vibrating tire. Statistical probability sampling is a matter for expert testimony. The trial court may take judicial notice that the procedure has been established with verifiable certainty. See *Hawkins v. State*, 223 Ga. App. 34, 36 (476 SE2d 803) (1996).

However, although the opinion evidence of experts as to questions of science or statistics is admissible into evidence, it is within the sound discretion of the trial court as to whether or not such opinion evidence would assist the jury or confuse the jury, and the decision to exclude such expert opinion from evidence will not be overruled absent a manifest abuse of discretion. See generally *Jones v. State*, 232 Ga. 762, 764-765 (2) (208 SE2d 850) (1974); *Orkin Exterminating Co. v. McIntosh*, 215 Ga. App. 587, 592-593 (4) (452 SE2d 159) (1994).

### Case No. A99A2150

6. Cooper Tire contends in numerous enumerations of error that the trial court erred in denying admission into evidence that the Crosbys were not wearing seat or safety belts at the time of the rollover, as required under OCGA § 40-8-76.1 (b). We do not agree.

Ga. L. 1988, pp. 31, 32, § 1, created OCGA § 40-8-76.1 and had prospective application only, because it created substantive rights

---

Tire, then such Code section would have to be satisfied. See *Wesleyan College v. Weber*, 238 Ga. App. 90 (517 SE2d 813) (1999); *Heyde v. Xtraman*, 199 Ga. App. 303, 308 (404 SE2d 607) (1991).

that excluded evidence as to contributory negligence, comparative negligence, causation, and mitigation of damages under prior case law. *Payne v. Joyner*, 197 Ga. App. 527, 528 (1) (399 SE2d 83) (1990).

In the original Act, subparagraph (d) reads:

> Failure to wear a seat safety belt in violation of this Code section shall not be considered evidence of negligence, shall not be considered by the court on any question of liability of any person, corporation, or insurer, . . . and shall not diminish any recovery for damages arising out of the ownership, maintenance, occupancy, or operation of a passenger vehicle.

Ga. L. 1988, pp. 31, 32, § 1. The caption of the Act provided the legislative intent "to provide that failure to use seat safety belts may not be introduced in evidence in any civil action and may not be used to diminish recovery of damages." Ga. L. 1988, pp. 31, 34, § 1. See *Copher v. Mackey*, 220 Ga. App. 43, 45 (4) (467 SE2d 362) (1996); see also *Meyer v. State*, 224 Ga. App. 183, 184 (480 SE2d 234) (1997); *Sovereign Camp Woodmen of the World v. Beard*, 26 Ga. App. 130, 131 (105 SE 629) (1921). In Ga. L. 1993, pp. 516, 517, § 1, OCGA § 40-8-76.1 (d) was amended to remove "in violation of this Code section." The caption of the Act stated the purpose to be "so as to provide that failure to wear a seat belt shall not be evidence of negligence." Ga. L. 1999, pp. 276, 277, § 1, amended OCGA § 40-8-76.1 to substitute "[t]he failure of an occupant of a motor vehicle which has a seat safety belt or belts" and to add that such shall not be evidence of "causation" or "otherwise be considered by the finder of fact" as to liability. The caption stated the purpose

> so as to provide that the failure to use a safety belt in a motor vehicle which has a safety belt or belts shall not be considered by a finder of fact as evidence of negligence or causation and shall not be considered in determining liability or to diminish a recovery for damages.

(a) Cooper Tire argues that the Bronco was an off-road vehicle mounted on a truck chassis exempted by the express language of Ga. L. 1988, pp. 31, 32, § 1 (OCGA § 40-8-76.1 (a)). "Off-road vehicle" is defined under OCGA § 40-7-3 (Ga. L. 1976, p. 330, § 3) as

> any motorized vehicle designed for or capable of cross-country travel on or immediately over land, water, snow, ice, marsh, swampland, or other natural terrain and not intended for use predominantly on public roads. It includes,

but is not limited to, four-wheel drive or low-pressure tire vehicles.

OCGA §§ 40-8-76.1 and 40-7-3 must be construed in pari materia, because at the time OCGA § 40-8-76.1 was first passed, the legislature was aware of the problems of highway crash safety that the safety act sought to remedy and did not intend to exclude "sport utility vehicles" ("SUV") from coverage under the Act. See *Ryan v. Commrs. of Chatham County*, 203 Ga. 730, 733 (1) (48 SE2d 86) (1948); *Undercofler v. L. C. Robinson & Sons, Inc.*, 111 Ga. App. 411, 414 (1) (141 SE2d 847) (1965), aff'd, 221 Ga. 391 (144 SE2d 755) (1965). However, while the Bronco, as a SUV, had design characteristics of an off-road vehicle, it was designed and intended primarily for use on public roads. Therefore, the General Assembly intended for seat safety belt legislation to apply to it as a passenger vehicle in order to promote safety. See generally OCGA § 40-4-2 (c) Type 6; *C. W. Matthews Contracting Co. v. Gover*, 263 Ga. 108, 109 (2) (428 SE2d 796) (1993); *Mayor of Hapeville v. Anderson*, 246 Ga. 786, 787 (272 SE2d 713) (1980). OCGA § 40-8-76.1 should not be construed to defeat the intent of the General Assembly to promote driver and passenger safety through mandating the wearing of seat belts but at the same time exclude the application to SUVs. See *Hollowell v. Jove*, 247 Ga. 678, 681 (279 SE2d 430) (1981); see also *C. W. Matthews Contracting Co. v. Gover*, supra at 109. Although in 1988, when the Act was passed, there were not as many SUVs as today, there was a sufficient number of SUVs on the road that the General Assembly did not intend to exclude them.

" 'Passenger car' means every motor vehicle . . . designed for carrying ten passengers or less and used for transportation of persons." OCGA § 40-1-1 (41). While SUVs have a pickup truck chassis, the body is that of a passenger vehicle, fitting the definition of "passenger car" in terms of passenger capacity. " 'Truck' means every motor vehicle designed, used, or maintained primarily for the transportation of property." OCGA § 40-1-1 (70). Thus, SUVs more closely fit the definition of a "passenger car" than a "truck" and replace most station wagons as dual purpose vehicles. In the Act, the "exclusion of vehicles mounted on a truck chassis" was intended to exclude trucks and those motor vehicles used primarily to carry more than ten passengers, i.e., buses and mini-buses; it was not intended to exclude SUVs. While the plain language of OCGA § 40-8-76.1 (a) appears to exclude off-road vehicles and vehicles on a truck chassis from coverage, such literal construction would defeat the legislative purpose of protecting the driving public. Therefore, the statute is to be construed to effectuate its purpose to protect occupants of passenger vehicles. See *Bd. of Trustees of the Policemen's Pension &c. v. Christy*,

246 Ga. 553, 554 (1) (272 SE2d 288) (1980); *City of Jesup v. Bennett*, 226 Ga. 606, 609 (2) (176 SE2d 81) (1970); *Bibb County v. Hancock*, 211 Ga. 429, 439-440 (2) (86 SE2d 511) (1955).

(b) Cooper Tire argues that, under OCGA § 40-8-76.1 (d), for the exclusion of evidence to apply, the occupant must not be wearing the seat belt and be charged with not wearing the seat belt; otherwise the exclusion does not apply. In this case, Cooper Tire argues that, although the occupants were not wearing safety belts, they were never charged; thus, the exclusion does not apply. This strained construction flies in the face of the plain language of OCGA § 40-8-76.1 (d) and the stated purpose of the General Assembly to exclude such fact from evidence.

(c) Cooper Tire contends that the failure to wear seat belts by the occupants of the Bronco was relevant and admissible for the limited purposes of (1) reduction of any damages; (2) refutation of an element of plaintiffs' failure to warn claim; and (3) impeachment. The language of the Act is plain and unambiguous when it says that failure to wear a safety belt "shall not be considered by the court on any question of liability" and "shall not diminish any recovery for damages arising out of the . . . occupancy, or operation of a passenger vehicle." Ga. L. 1988, p. 33, § 1. The General Assembly intended to statutorily exclude comparative negligence, contributory negligence, causation, and mitigation of damages under former law.[3] See OCGA § 40-8-76.1; *C. W. Matthews Contracting Co. v. Gover*, supra at 108; *Tuggle v. Helms*, 231 Ga. App. 899, 903 (2) (499 SE2d 365) (1998). Thus, unlike general rules of evidence which permit admission of evidence for one purpose although not for other purposes, the legislative intent of the statute was to prohibit the admission of evidence that no seat belt was worn for *all* purposes. See generally *Johnson v. State*, 146 Ga. App. 277, 280 (2) (246 SE2d 363) (1978) (an act may intend to exclude evidence for any purpose). Through each successive amendment to this Act, the General Assembly repeatedly expressed its overriding intent not to allow admission of the failure to wear safety belts. See Ga. L. 1999, p. 276, § 1; Ga. L. 1993, p. 516, § 1; Ga. L. 1988, pp. 31, 33, § 1; see also *Porquez v. Washington*, 268 Ga. 649, 652 (1) (492 SE2d 665) (1997) (subsequent amendments to an act affirm earlier legislative intent).

---

[3] The General Assembly wished to promote passenger safety by mandating safety belt wearing, but avoid any common law negligence either under comparative or contributory negligence or mitigation of damages. Thus, it prohibited the admission of evidence for such purposes. See former case law showing what was excluded by statute: *Jones v. Livingston*, 203 Ga. App. 99, 102 (3) (416 SE2d 142) (1992); *Jones v. Scarborough*, 194 Ga. App. 468 (1) (390 SE2d 674) (1990); *Katz v. White*, 190 Ga. App. 458, 459 (379 SE2d 186) (1989); *F. A. F. Motor Cars v. Childers*, 181 Ga. App. 821, 822 (3) (a) (354 SE2d 6) (1987); *Wendlandt v. Shepherd Constr. Co.*, 178 Ga. App. 153, 154-155 (1) (342 SE2d 352) (1986).

7. Cooper Tire contends that the trial court erred in denying it the opportunity to cross-examine Crosby on allegations in her complaint. We do not agree.

(a) The complaint was amended by the consolidated pre-trial order, which superceded the complaint and thereby amended the pleadings. OCGA § 9-11-16 (a). In her outline of the case in the pre-trial order, Crosby amended the complaint as to causation, eliminating that Ford Motor Company negligently designed and manufactured the Bronco. Therefore, the contentions in the complaint were no longer solemn admissions in judicio, because the pre-trial order amended the complaint, deleting such contentions. OCGA § 24-3-30; *Ballenger Paving Co. v. Gaines*, 231 Ga. App. 565, 570 (1) (499 SE2d 722) (1998).

(b) The allegations of the defect in design and manufacture of the Bronco by Ford Motor Company, negligence, and causation were similar to the bare allegations made against Cooper Tire, i.e., mere opinions, conclusions, and allegations that plaintiff was required to prove at trial and not simple statements of fact. The mere allegations in pleadings, even when verified, do not rise to the level of evidence of facts. See *Jerry Lipps, Inc. v. Lewallen*, 118 Ga. App. 479 (164 SE2d 232) (1968). Likewise, conclusory allegations in pleadings or affidavits are not facts. *Taeger Enterprises v. Herdlein Technologies*, 213 Ga. App. 740, 744-746 (1) (445 SE2d 848) (1994); *Sullivan v. Fabe*, 198 Ga. App. 824, 826 (1) (403 SE2d 208) (1991); *Cornell Indus. v. Colonial Bank*, 162 Ga. App. 822, 823-824 (1) (293 SE2d 370) (1982). "The rule as to admissions in judicio applies only to admissions of fact and does not apply to opinions or conclusions. [Cits.]" *Aycock v. Calk*, 228 Ga. App. 172, 174 (491 SE2d 383) (1997). Therefore, there was no admission in judicio in the complaint, because opinions and conclusions in the pleadings are not admissions in judicio. *Scott v. Jefferson*, 174 Ga. App. 651, 652 (1) (331 SE2d 1) (1985).

8. Cooper Tire contends that the trial court erred in excluding from evidence portions of Crosby's answers to interrogatories. We agree.

The answers to the interrogatories expressed the opinions or conclusions that Ford Motor Company was responsible for a joint proximate cause of the Bronco's rollover through defective design and manufacture. This was an admission against interest and a prior contradictory opinion.

In this case, such answers to interrogatories by a party, while hearsay, were admissible in evidence as admissions against interest or to serve as impeachment of the party. *Taeger Enterprises v. Herdlein Technologies*, supra at 745; *Carter v. Tatum*, 134 Ga. App. 345, 347 (1) (212 SE2d 439) (1975). While such contentions as to causation and negligence by Ford Motor Company in the rollover were mere

opinions or conclusions, these answers constituted prior inconsistent statements which could be used for purposes of impeachment of Crosby. *Everson v. Franklin Discount Co.*, 248 Ga. 811, 813 (2) (285 SE2d 530) (1982); *Benn v. McBride*, 140 Ga. App. 698, 699-700 (3) (231 SE2d 438) (1976); *Carter v. Tatum*, supra.

9. Cooper Tire's final contention is that the exclusion of evidence of not wearing safety belts under OCGA § 40-8-76.1 (d) violates both equal protection and due process rights under both the United States and Georgia Constitutions.

On July 7, 1997, Crosby made a written motion in limine to exclude any evidence regarding the failure to wear safety belts under OCGA § 40-8-76.1 (d). On July 17, 1997, Cooper Tire filed its written response to the motion in limine, including a specific written constitutional attack on OCGA § 40-8-76.1 (d), both under equal protection and due process grounds under the United States and Georgia Constitutions. However, the trial court never expressly and plainly ruled upon the constitutional issues. Instead, the trial court granted Crosby's motion in limine in a simple, four-line order.

Where a constitutional attack on a statute is not clearly passed upon by the trial court, such constitutional issue cannot be addressed on appeal. *Kosikowski v. Kosikowski*, 243 Ga. 413, 414 (3) (254 SE2d 363) (1979); *Rowe v. Fleet Mtg. Corp.*, 226 Ga. App. 593, 594 (3) (487 SE2d 133) (1997); *Bryant v. Employees Retirement System &c.*, 216 Ga. App. 737, 739 (2) (455 SE2d 839) (1995).

*Judgment affirmed in Case No. A99A2150. Judgment affirmed in part and reversed in part and case remanded for new trial in Case No. A99A1980. Blackburn, P. J., and Barnes, J., concur.*

DECIDED NOVEMBER 2, 1999 —
RECONSIDERATION DENIED NOVEMBER 17, 1999 — ▮

*Cathey & Strain, Edward E. Strain III, David A. Sleppy, James E. Staples, Jr., Cottingham & Porter, Sidney L. Cottingham, Robert L. Porter, Jr.*, for appellants.

*Drew, Eckl & Farnham, W. Wray Eckl, Lucian Gillis, Jr., Melanie C. Eyre, Watson, Spence, Lowe & Chambless, Dawn G. Benson*, for appellee.