S10A0864. SPALDING COUNTY BOARD OF ELECTIONS et al.
v. McCORD.

(700 SE2d 558)

NAHMIAS, Justice.

On December 1, 2009, the Spalding County Board of Elections supervised a run-off election for the District 6 seat on the City of Griffin Board of Commissioners. The incumbent, appellee Rodney McCord, lost by 25 votes to appellant Shaheer Beyah. McCord filed a timely election contest in the Superior Court of Spalding County, alleging that a number of electors greater than the margin of victory in the runoff had illegally cast absentee ballots because they did not have one of the six reasons for voting by absentee ballot specified in OCGA § 21-2-380 (a).

As OCGA § 21-2-380 existed on December 1, 2009, subsection (a) defined an "absentee elector" as an elector who had one of six reasons to vote by absentee ballot (e.g., being older than age 75), while subsection (b) provided that an elector who wanted to cast an absentee ballot "shall not be required to provide a reason" for doing so. After an evidentiary hearing, the trial court ruled that, under subsection (b), electors could vote by absentee ballot without *stating* whether they had one of the six reasons specified by subsection (a), but that the electors, *in fact*, had to have one of those reasons to be eligible to cast an absentee ballot. The court also found that at least 25 voters who voted by absentee ballot were not qualified to do so under OCGA § 21-2-380 (a), casting the result of the election into doubt. The court therefore invalidated the election and ordered a new election to occur on March 10, 2010. The Board of Elections and Beyah promptly appealed and sought a stay of the trial court's order, which we granted. For the reasons that follow, we now reverse.

1. Understanding the meaning of the statutory provisions applicable to absentee voting in 2009 requires an understanding of the history of the relevant legislative enactments before and after that time.

**A. Pre-2003:** For many years, Georgia allowed absentee voting in only limited circumstances. In 1964, the predecessor to OCGA § 21-2-380 was enacted and permitted electors to vote by absentee ballot for only two reasons. See then Code Ann. § 34-1401 (Ga. L. 1964, Ex. Sess., p. 26, § 1). Over the next four decades, OCGA § 21-2-380 was amended to ultimately include six reasons for casting an absentee ballot. See, e.g., Ga. L. 1989, p. 1084, § 1; Ga. L. 1998, pp. 295, 425. Thus, before its 2003 amendments, OCGA § 21-2-380,

which did not have a subsection (b), provided as follows:

> As used in this article, the term "absentee elector" means an elector of this state or a municipality thereof who:
>
> (1) Is required to be absent from his or her precinct during the time of the primary or election he or she desires to vote in;
>
> (2) Will perform any of the official acts or duties set forth in this chapter in connection with the primary or election he or she desires to vote in;
>
> (3) Because of physical disability or because of being required to give constant care to someone who is physically disabled, will be unable to be present at the polls on the day of such primary or election;
>
> (4) Because the election or primary falls upon a religious holiday observed by such elector, will be unable to be present at the polls on the day of such primary or election;
>
> (5) Is required to remain on duty in his or her place of employment for the protection of the health, life, or safety of the public during the entire time the polls are open when such place of employment is within the precinct in which the voter resides; or
>
> (6) Is 75 years of age or older.

Ga. L. 1998, p. 425. In addition, OCGA § 21-2-381 (a) (1) provided that an application for an absentee ballot had to state "the reason for requesting the absentee ballot." Ga. L. 1998, p. 426.

Accordingly, to vote by absentee ballot before the 2003 amendments, electors had to have one of the six fairly uncommon reasons listed in OCGA § 21-2-380 and had to state on their applications their specific reason for casting an absentee ballot.

**B. 2003 Amendments:** The law of absentee voting began to change in 2003. OCGA § 21-2-380 was amended by placing the existing provisions into a subsection (a) and adding a new subsection (b), which provided for "early voting" as follows:

> An elector who casts an absentee ballot in person at the registrar's office or absentee ballot clerk's office during the period of Monday through Friday of the week immediately preceding the date of a primary, election, or run-off primary or election shall not be required to provide a reason as identified in subsection (a) of this Code section in order to cast an absentee ballot in such primary, election, or run-off primary or election.

Ga. L. 2003, pp. 517, 537-538, § 35. Although OCGA § 21-2-381 (a) (1) was also amended in 2003, it retained its provision requiring an elector to "state the reason for requesting the absentee ballot." Ga. L. 2003, p. 538.

The preamble to the 2003 legislation explained that one of its purposes was "to change the qualifications to vote by absentee ballot." Ga. L. 2003, p. 518. Although a preamble is not a part of the act and therefore cannot control over its plain meaning, it may be considered as evidence of the meaning of an ambiguous, codified law. See, e.g., *Brown v. Earp*, 261 Ga. 522, 523-524 (407 SE2d 737) (1991); *State Bd. of Ed. v. County Bd. of Ed.*, 190 Ga. 588, 596 (10 SE2d 369) (1940). The only 2003 amendment that related to a *"qualification* to vote by absentee ballot" was the addition of subsection (b) to OCGA § 21-2-380; the other changes clearly related to election procedures. See, e.g., Ga. L. 2003, p. 533 (amending OCGA § 21-2-287 relating to the form of an absentee ballot); Ga. L. 2003, p. 539 (amending OCGA § 21-2-383 relating to preparation and delivery of absentee ballots). Accordingly, if, as the trial court ruled, all electors were required to have one of the six reasons specified in subsection (a) to cast an absentee ballot, even those casting an absentee ballot in person, there would have been no "change [to] the qualifications to vote by absentee ballot," as only the procedure for casting an absentee ballot would have changed (that is, an elector previously qualified by one of the six reasons could now cast the ballot at the registrar's office the week before the election). By contrast, reading OCGA § 21-2-380 (b)'s language as eliminating the requirement that an in-person absentee elector have one of the six reasons listed in OCGA § 21-2-380 (a) reflects a significant change in the qualifications of those voters.

The trial court's interpretation also would result in a non-sensical enforcement regime. Subsection (b) stated that an "elector . . . *shall not be required* to provide a reason" for casting an absentee ballot. (Emphasis supplied.) A statutory scheme that does not permit election officials to simply require electors to provide their reason for absentee voting at the time their votes are cast, but then permits private citizens challenging the election results to require electors to provide a listed reason after the fact by filing a lawsuit and eliciting the reasons at an evidentiary hearing would undermine the regularity and finality of elections with no apparent rationale.

Thus, after the 2003 amendments, with respect to early in-person voting, subsection (b) of OCGA § 21-2-380 was in apparent conflict with subsection (a), as well as with OCGA § 21-2-381 (a) (1), which required electors to state a reason for requesting an absentee ballot, and that conflict could not be resolved using the trial court's

reasoning. However, electors other than those who cast absentee ballots in person before election day continued to have to provide one of the six reasons for casting an absentee ballot.

**C. 2005 Amendments:** The 2005 amendments further expanded the ability of electors to vote by absentee ballot without a specific reason. OCGA § 21-2-380 (a) retained the six specific reasons for absentee voting, but subsection (b) was amended to add a second and much larger category — those "who request[ ] an absentee ballot by mail" — to the electors who "shall not be required to provide a reason as identified in subsection (a) of this Code section in order to cast an absentee ballot." Ga. L. 2005, pp. 253, 283, § 50.

The 2005 amendments also restructured and amended OCGA § 21-2-381, which establishes the requirements for requesting an absentee ballot application by mail. Subsection (a) (1) (C) modified the requirement that an elector had to state "the reason for requesting the absentee ballot" by adding "if applicable." Ga. L. 2005, p. 283, § 51. See also id., p. 284 (amending OCGA § 21-2-381 (a) (3) to add the "if applicable" language for applications for absentee ballots that electors receive from "a person, entity, or organization," as opposed to election officials). In addition, OCGA § 21-2-381 (b) (1) was amended to provide that, "[i]n order to be found eligible to vote an absentee ballot in person at the registrar's office or absentee ballot clerk's office, such person shall show one of the forms of identification listed in Code Section 21-2-417." Ga. L. 2005, p. 285, § 51.

Thus, after the 2005 amendments, in addition to electors who cast absentee ballots in person the week before election day, electors requesting to vote by absentee ballot by mail could no longer "be required" by election officials to provide a reason for doing so. Moreover, the amendments made OCGA § 21-2-381 (a) (1) (C) more consistent with OCGA § 21-2-380 (b) by adding the words "if applicable" to the requirement that an elector state a reason for voting by absentee ballot on the application. And OCGA § 21-2-381 (b) (1) directed election officials to determine if an elector was "eligible" to vote by absentee ballot in person solely by checking whether the person had proper identification. No group of electors could now be required to provide one of the six reasons for voting by absentee ballot listed in OCGA § 21-2-380 (a), nor were election officials directed to examine in-person absentee voter eligibility by reference to those reasons.

**D. 2008 Amendments:** OCGA § 21-2-380 (a) remained on the books after the 2008 amendments, but subsection (b) was revised to

provide as follows:

> An elector who requests an absentee ballot by mail or who casts an absentee ballot in person at the registrar's office or absentee ballot clerk's office shall not be required to provide a reason in order to cast an absentee ballot in any primary, election, or run-off primary or election.

Ga. L. 2008, pp. 448, 448-449, § 1. OCGA § 21-2-381 (b) (1) continued to provide that an elector was eligible to cast an absentee ballot in person if the election official verified the elector's identity by "compar[ing] the identifying information on the application with the information on file in the registrar's office." Ga. L. 2008, p. 449, § 3. But this subsection was amended to add a similar focus on identification for electors voting absentee by mail. Such an elector would be "eligible" if the election official verified the elector's identification by

> compar[ing] the identifying information on the application with the information on file in the registrar's office and, if the application is signed by the elector, compar[ing] the signature or mark of the elector on the application with the signature or mark of the elector on the elector's voter registration card.

Ga. L. 2008, p. 449, § 3.

Accordingly, beginning in 2008, OCGA § 21-2-380 (b) authorized in-person absentee voting even earlier than the week before election day, as well as absentee voting by mail, and precluded election officials from "requiring" electors to provide their reason for casting an absentee ballot. OCGA § 21-2-381 (a) continued to provide that electors need not provide a reason for voting by absentee ballot on their application. And OCGA § 21-2-381 (b) (1) was amended to provide that all electors, not just those voting in person, were "eligible" to vote by absentee ballot if they could be properly identified by election officials.

This was the situation at the time of the December 2009 run-off election at issue in this case. To properly understand the meaning of the relevant absentee voting statutes at that time, several canons of statutory construction come into play. The trial court looked only to the presumption against treating any statutory language as surplusage. See *Harris v. State*, 286 Ga. 245, 251 (686 SE2d 777) (2009). The court attempted to give meaning to both subsections (a) and (b) of OCGA § 21-2-380 by construing the former to mean that an elector had to actually have one of the six reasons to vote by absentee ballot

and the latter to mean that an elector did not have to provide that reason to election officials. As discussed above, this interpretation conflicts with the most natural meaning of OCGA § 21-2-380 (b), as well as of OCGA § 21-2-381 (a) and (b) (1). See *Harris*, 286 Ga. at 251. It also produces a non-sensical enforcement regime. See *Haugen v. Henry County*, 277 Ga. 743, 745 (594 SE2d 324) (2004) (noting that statutes should not be construed to produce absurd results). And it overlooks the evolution of the relevant statutes, including the preamble to the 2003 legislation. See *Glinton v. And R, Inc.*, 271 Ga. 864, 866-867 (524 SE2d 481) (1999) (explaining where statutes are in conflict and cannot be reconciled, the "later statutes prevail over earlier statutes").

Read in that full, natural, and historical context, applying all of those tools of statutory interpretation, we conclude that OCGA § 21-2-380 (a) cannot be construed to require electors to have a specific reason to vote by absentee ballot. This is not a case where the statutory language at issue was enacted contemporaneously, which would have made the presumption against surplusage stronger. Rather, OCGA § 21-2-380 (a) is an older provision whose import was eroded to nothingness over the course of several subsequent enactments. In particular, OCGA § 21-2-380 (b) was first enacted in 2003 to "change the qualifications" for absentee voters by eliminating the requirement that certain electors "provide a reason" for voting absentee, and that provision was expanded to all absentee voters in 2005 and carried forward in 2008. In addition, as most recently amended in 2005 and 2008, the plain language of OCGA § 21-2-381 (b) requires that election officials verify the eligibility of absentee voters by one and only one criterion — their identification.[1] Because OCGA §§ 21-2-381 and 21-2-380 (b) are the later enacted statutes and reflect the General Assembly's repeated enactments over the past seven years to expand the scope and ease of absentee voting, the clear language of OCGA §§ 21-2-380 (b) and 21-2-381 must control.

For these reasons, based on the legislative enactments as of December 2009, we interpret OCGA § 21-2-380 (a) to have been rendered nugatory by the time of the run-off election at issue.

**E. 2010 Amendments:** This interpretation is further supported by the most recent enactment of the General Assembly. See *Tippins Bank & Trust Co. v. Southern Gen. Ins. Co.*, 266 Ga. 97, 98 (464 SE2d 381) (1995) (explaining that we may consider acts of the General Assembly that become effective after the controversy at

---

[1] The validity of the voter identification requirements has not been challenged in this case. Compare *Democratic Party of Georgia v. Perdue*, Case No. S10A1517.

issue if they relate to the same subject as the statute at issue). In 2010, recognizing the reality that had been created by the amendments in 2003, 2005, and 2008, the General Assembly amended OCGA § 21-2-380 to formally delete the six reasons for absentee voting. That Code section now provides simply as follows:

> (a) As used in this article, the term "absentee elector" means an elector of this state or a municipality thereof who casts a ballot in a primary, election, or runoff other than in person at the polls on the day of such primary, election, or runoff.
>
> (b) An elector who votes by absentee ballot shall not be required to provide a reason in order to cast an absentee ballot in any primary, election, or runoff.

Ga. L. 2010, p. 914, § 17. The 2010 law similarly amended OCGA § 21-2-381 (a) (1) (C) by deleting the requirement that the elector state "the reason for requesting the absentee ballot, if applicable," see Ga. L. 2010, § 18, while making no changes to OCGA § 21-2-380 (b).

We also note that, while deleting the six reasons for absentee voting listed in the prior versions of OCGA § 21-2-380 (a), the Legislature retained the language from the previous versions of subsection (b) that an elector "shall not be required to provide a reason" to cast an absentee ballot. The General Assembly did not amend subsection (b) to provide, for example, that an elector "shall not be required to *have* a reason" to cast an absentee ballot, as the trial court's interpretation would suggest.[2]

For these reasons, the 2010 amendments support our interpretation that, at the time of the 2009 election in this case, electors were not required to have a reason to vote by absentee ballot. We therefore reverse the trial court's ruling.

*Judgment reversed. All the Justices concur.*

---

[2] McCord also contends that OCGA § 21-2-573 supports the trial court's interpretation of OCGA § 21-2-380 (a). OCGA § 21-2-573 provides that "[a]ny person who votes or attempts to vote by absentee ballot . . . who knows that he or she is not qualified to vote shall be guilty of a felony." McCord argues that, if any registered voter can vote by absentee ballot without needing a reason to do so, it cannot be a crime to vote as an unqualified absentee voter. However, OCGA § 21-2-573 has never defined who is eligible to vote; instead, the phrase "is not qualified to vote" encompasses persons who do not meet the qualifications to vote at all in the relevant election, see OCGA § 21-2-216 (setting forth qualifications of electors), apart from whether they meet whatever qualifications might have existed for voting by absentee ballot. The 2010 amendment to OCGA § 21-2-380 confirms this view. The General Assembly clarified that any elector can seek to vote by absentee ballot without having a reason, yet it did not amend OCGA § 21-2-573, indicating that electors can still violate OCGA § 21-2-573 if they are not qualified to vote at all.

DECIDED OCTOBER 4, 2010.

*Beck, Owen & Murray, James R. Fortune, Jr., Intisar H. Rashid,* for appellants.
*Wayne B. Kendall,* for appellee.