300 Ga. 626
FINAL COPY

S16G0595.  CHANDLER TELECOM, LLC et al. v. BURDETTE.

PETERSON, Justice.

This case presents the question of whether an employee may — in deliberate disobedience of his employer's explicit prohibition — act in a knowingly dangerous fashion with disregard for the probable consequences of that act, and still recover workers' compensation when injured by that disobedient act.  We conclude that OCGA § 34-9-17 (a), as we have interpreted it for nearly a century, may bar recovery in such cases.

Adrian Burdette was seriously injured when he fell while attempting a controlled descent from a cell-phone tower in contravention of instructions by his employer, Chandler Telecom, LLC ("Chandler"), that technicians must climb down from towers.  The State Board of Workers' Compensation (the "Board") adopted an administrative law judge's ("ALJ") findings and concluded that Burdette was barred from receiving compensation because he engaged in "willful misconduct" within the meaning of OCGA § 34-9-17 (a).  Burdette

appealed to the superior court, which affirmed the Board's decision by operation of law. Burdette then appealed to the Court of Appeals. The Court of Appeals reversed, concluding that Burdette's actions did not constitute "willful misconduct" as we defined that term nearly a century ago in Aetna Life Ins. Co. v. Carroll, 169 Ga. 333 (150 SE 208) (1929) ("Carroll"). Burdette v. Chandler Telecom, LLC, 335 Ga. App. 190 (779 SE2d 75) (2015).  We granted certiorari to determine whether the Court of Appeals erred in its interpretation and application of Carroll. Because we conclude that the Court of Appeals misapplied Carroll and improperly made its own findings, we reverse; because the Board's limited findings preclude meaningful review of whether the Board properly applied Carroll, we remand.

As set forth in the Court of Appeals opinion, the record in this case, when viewed in the light most favorable to the prevailing party, shows as follows:

> Burdette was initially employed by Chandler as a cell-tower technician on September 1, 2012, and he worked there for three weeks before taking a five-week leave of absence. Burdette was terminated during his leave of absence due to a miscommunication with his supervisor, but he was then rehired on November 2, 2012. During Burdette's leave of absence, Chandler required all of its

2

cell-tower technicians to [be] ComTrain certified.[1] Upon his return, Burdette was asked if he was ComTrain certified, and he lied and said that he had this certification.

On November 5, 2012, Burdette's first day back at work, he was assigned to work on the top of a cell tower with Brian Prejean, who was the "lead tower hand" of the crew. And prior to their shift that day, the supervisor over Burdette's six-person crew instructed them to climb down the towers and not to use controlled descent. Prejean and Burdette then worked together on the same cell tower from around 8:00 a.m. until 3:30 or 4:00 p.m. When their work was almost complete, Prejean instructed Burdette to climb down the tower, but Burdette responded that he wanted to use controlled descent instead.

Prejean's account of his conversation with Burdette just before Burdette's descent (and fall) is as follows:

> I told him no, man, just climb down. Might as well just climb down. . . . [W]e don't have a safety rope up here for you to grab. He told me he had done this so many times. I was like, dude, they're going to be mad if you do it. [Our supervisor] will be mad if you do it and, . . . you might not have a job or you might, you know, have to deal with the consequences if you don't listen . . . .

Nevertheless, even after Prejean instructed Burdette to climb down the tower two or three more times, Burdette prepared his equipment

---

[1] As noted by the Court of Appeals,

ComTrain is a third-party company that instructs cell-tower technicians to climb and descend cell-phone towers. Specifically, it trains technicians to use "controlled descent" when descending the towers. Controlled descent is similar to rappelling, except there is no "kick off" and the technicians must descend at a slow, safe, and controlled speed. According to a Chandler representative, controlled descent is used only when rescuing someone, and Chandler technicians are "always supposed to climb down."

Burdette, 335 Ga. App. at 191 n.4.

and began controlled descent. Shortly thereafter, Burdette fell a great distance from the tower and landed on an "ice bridge," which caused serious injuries to his ankle, leg, and hip. Burdette has no memory of his fall or anything that happened immediately before or after it, including his conversation with Prejean. Prejean testified that Burdette's fall was the result of "user error," rather than any equipment malfunction. He further noted that, while Burdette had the required equipment for climbing down, he did not have all of the necessary equipment for controlled descent.

335 Ga. App. at 191-92 (footnotes omitted).

In reversing the Board's decision, the Court of Appeals concluded that Burdette's intentional violation of an employer rule and other explicit instructions was not "willful misconduct" under OCGA § 34-9-17 (a). It arrived at this conclusion, citing <u>Carroll</u>, because Burdette's violation was not of a "quasi criminal nature involving the intentional doing of something either with the knowledge that it is likely to result in serious injury, or with a wanton and reckless disregard of its probable consequences." <u>Burdette</u>, 335 Ga. App. at 195 (2) (citation, punctuation and emphasis omitted).

1. *Statutory framework*

(a) *Statutory text*

4

The Georgia Workmens' Compensation Act ("the Act") was enacted in

1920. Ga. L. 1920, p. 167. At the time, section 14 of the Act pertinently provided:

> [N]o compensation shall be allowed for any injury or death due to the employee's wilful misconduct, including intentional self-inflicted injury, or growing out of his attempt to injure another, or due to intoxication or wilful failure or refusal to use a safety appliance or perform a duty required by statute, or the wilful breach of any rule or regulation adopted by the employer and approved by the Industrial Commission, and brought prior to the accident to the knowledge of the employee. The burden of proof shall be upon him who claims an exemption or forfeiture under this section.

Ga. L. 1920, pp. 167, 177, § 14. This was the statutory language that Carroll

considered in 1929. See 169 Ga. at 340 (quoting § 14 of the Act). This statutory

language remained largely unchanged until 1996,[2] when the legislature removed

the language relating to violations of employer rules approved by the Board. See

---

[2] In 1990, the legislature amended the statute to make clear that willful misconduct includes "being under the influence of marijuana or a controlled substance," except for lawful prescriptions, and clarified the existing reference to "intoxication" to be "by alcohol." Ga. L. 1990, p. 1147, § 1. The legislature amended the statute in 1994 to expand the "intoxication" and "being under the influence" provisions and place them in a separate subdivision. Ga. L. 1994, pp. 887, 889, § 2.

Ga. L. 1996, pp. 1293-94, § 4.[3] The current version of the statute's provisions

relevant here is as follows:

> No compensation shall be allowed for an injury or death due
> to the employee's willful misconduct, including intentionally self-
> inflicted injury, or growing out of his or her attempt to injure
> another, or for the willful failure or refusal to use a safety appliance
> or perform a duty required by statute.

---

[3] The effect of this amendment was not, as the Georgia Legal Foundation argues in its amicus brief, to remove violations of employer rules from the definition of "willful misconduct." Almost 70 years before the 1996 amendment, we stated in Carroll that the statute's list of actions following the term "willful misconduct" were merely non-exhaustive illustrations of that term. Carroll, 169 Ga. at 341 (the specific instances enumerated are non-exhaustive and "are given as illustrations of wilful misconduct. Many other things besides those enumerated may constitute wilful misconduct"). This construction has remained unchanged ever since. Cf. Wilbro v. Mossman, 207 Ga. App. 387, 389 (427 SE2d 857) (1993) (noting the superior court had previously remanded case for the Board to consider Carroll's statement that "the conduct enumerated in OCGA § 34-9-17 is not exhaustive of the acts which may constitute wilful misconduct"). Because we said in Carroll that "willful misconduct" was not limited to the enumerated acts, it naturally follows that removal of one of the enumerated acts would not excise that act from the definition of "willful misconduct" so long as the general definition would otherwise encompass it. The 1996 Amendment must be viewed through the lens of our statement in Carroll. See Retention Alternatives, Ltd. v. Hayward, 285 Ga. 437, 440 (2) (678 SE2d 877) (2009) (the General Assembly is presumed to act with the full knowledge of the existing state of the law). So viewed, the effect of the 1996 Amendment was simply to place acts that violate employer rules on the same footing with any other acts alleged to constitute willful misconduct; rules no longer must be approved by the Board before their violation bars compensation, but not all violations of rules will suffice — only those violations that otherwise satisfy Carroll's definition of willful misconduct as we explain it here. And the caption to the 1996 Amendment is consistent with this textual conclusion. See Ga. L. 1996, p. 1291 ("To amend Chapter 9 of Title 34 . . . relating to workers' compensation, so as to . . . strike the requirement of board approval of safety rules"); Spalding Cty. Bd. of Elections v. McCord, 287 Ga. 835, 837 (1) (B) (700 SE2d 558) (2010) (preamble to legislation is "not a part of the act and therefore cannot control over its plain meaning," but may be "considered as evidence of the meaning of an ambiguous, codified law").

OCGA § 34-9-17 (a).

(b) *Case law explaining scope of OCGA § 34-9-17 (a)*

More than 90 years ago, this Court in <u>Carroll</u> explained the scope of "willful misconduct," which the statute does not define. <u>Carroll</u> noted the general rule that willful misconduct is more than mere negligence; more than the mere disregard of a duty established by, among other things, a statute or an employer's rule; and more than the simple "doing of hazardous acts where the danger is obvious." <u>Carroll</u>, 169 Ga. at 341-42 (1). <u>Carroll</u> then surveyed foreign jurisdictions with statutes similar to Section 14 of the Act to examine the common meaning given to the term "willful misconduct" in workers' compensation cases. Id. at 342-43 (1). Based on this thorough review, <u>Carroll</u> explained that

> [w]ilful misconduct by an employee, preventing recovery of compensation, involves an intentional, deliberate action, with a reckless disregard of consequences, either to himself or another; something less than self-infliction of injury, but greater than gross negligence or wanton carelessness. Wilful misconduct is much more than mere negligence, or even than gross negligence. It involves conduct of a quasi-criminal nature, *the intentional doing of something, either with the knowledge that it is likely to result in serious injury, or with a wanton and reckless disregard of its probable consequences*. . . . Wilful misconduct includes all conscious or intentional violations of definite law or rules of

7

conduct, obedience to which is not discretionary, as distinguished from inadvertent, unconscious, or involuntary violations.

Id. at 342-43 (1) (citations omitted; emphasis supplied). Carroll thus established the requisite mental state that an employee must have for his or her actions to constitute willful misconduct: an intentional and deliberate action done either with the knowledge that it is likely to result in serious injury, or with a wanton and reckless disregard of its probable consequences, including as relevant here "conscious or intentional violations of definite law or rules of conduct, obedience to which is not discretionary." Id. at 343 (1).

2. *The Court of Appeals' misapplication of Carroll*

But nearly a quarter century ago, the Court of Appeals' understanding of Carroll went astray. In Wilbro v. Mossman, 207 Ga. App. 387 (427 SE2d 857) (1993), an employee was told by her supervisor not to step onto shelves to restock the highest shelf. The ALJ found that the employee's disregard of her employer's directives was "willful, deliberate, conscious, and intentional," and the Board adopted these findings. Id. at 387-89.[4] The Court of Appeals

---

[4] The Board ruled, however, that the employee's violation of an employer rule was not "willful misconduct" barring compensation because the version of OCGA § 34-9-17 existing at the time required employer rules to be approved by the Board before their violation could constitute willful misconduct, and the employer rule in that case had not been. Wilbro, 207 Ga. App. at 389.

determined that the "conduct was at most a violation of instructions and/or the doing of a hazardous act in which the danger was obvious, but was not conduct that was criminal or quasi-criminal in nature." Id. at 390-91 (1). Wilbro offered no further reasoning to explain its conclusion; it may well have misunderstood the phrase "criminal or quasi-criminal" to refer to violations of penal statutes or similar acts. But this is not how Carroll used that phrase. Instead, Carroll explicitly stated that "criminal or quasi-criminal" meant simply "the intentional doing of something either with the knowledge that it is likely to result in serious injury, or with the wanton and reckless disregard of its probable consequences." 169 Ga. at 342 (1) (citations omitted).

Carroll makes clear that, standing alone, the mere violation of instructions or the mere doing of a hazardous act in which the danger is obvious cannot constitute willful misconduct. Id. at 341 (1) ("The general rule is that the mere violations of instructions, orders, rules, ordinances, and statutes, and the doing of hazardous acts where the danger is obvious, do not, without more, as a matter of law, constitute wilful misconduct."). But this does not mean that the intentional violation of rules cannot ever constitute willful misconduct when the violation entails knowingly doing a hazardous act in which the danger is

9

obvious. Rather, in such cases, the finder of fact must determine whether such an intentional act was done either with the knowledge that it was likely to result in serious injury, or with the wanton and reckless disregard of its probable consequences. Wilbro thus misunderstood Carroll, and the Court of Appeals erred in this case by following Wilbro's mistaken analysis.[5]

The Court of Appeals also erred by making findings instead of remanding to the Board. Although the Board, in adopting the ALJ's findings, found that Burdette willfully disobeyed Chandler's instructions, the Board did not make any findings as to whether Burdette intentionally violated those instructions "either with the knowledge that it is likely to result in serious injury, or with a wanton and reckless disregard of its probable consequences." Carroll, 169 Ga. at 342 (1). The Board's analysis was therefore incomplete, and the Court of Appeals should have vacated the Board's decision and remanded for further findings on this point. Instead, the Court of Appeals made its own finding that Burdette did not act with the requisite knowledge or recklessness. It was not

---

[5] We note that the Court of Appeals appears to have realized that requiring the showing of a criminal act, or something like it, bears little resemblance to the statutory text, but believed it was bound to apply that requirement. See Burdette, 335 Ga. App. at 196 (2) n.32. Although mistaken in this case, the Court of Appeals rightly articulated its obligation to follow our decisions.

10

authorized to make such a finding. See Ray Bell Constr. Co. v. King, 281 Ga. 853, 854 (642 SE2d 841) (2007) (an appellate court is "without authority to substitute itself as a factfinding body when reviewing a workers' compensation decision"). This also was error.

In concluding that intentional violations of employer rules may constitute willful misconduct, we do not suggest that all intentional violations of employer rules bar compensation. An intentional violation bars compensation only when done either with the knowledge that it is likely to result in serious injury, or with a wanton and reckless disregard of its probable injurious consequences. See Carroll, 169 Ga. at 342 (1). Here, the Board made no findings on this point, and we reverse and remand for the Court of Appeals to remand to the superior court with instructions to remand to the Board to consider the issue and make appropriate factual findings.

Judgment reversed and case remanded with direction. All the Justices concur.

Decided February 27, 2017.

Certiorari to the Court of Appeals of Georgia — 335 Ga. App. 190.

11

Andrew G. Daugherty, for appellants.

Law Firm of Jack F. Witcher, Jack F. Witcher, Daniel B. Greenfield, for appellee.

Moore, Ingram, Johnson & Steele, Robert D. Ingram, Leslie S. Neubauer; Law Office of Thomas M. Finn, Rebecca E. Liner; Pamela B. Waldorf; Morgan & Morgan, Todd K. Maziar, amici curiae.