314 Ga. 59
FINAL COPY

S22Q0279.  DOMINGUE et al. v. FORD MOTOR COMPANY.

WARREN, Justice.

In 1988, the Georgia General Assembly enacted OCGA § 40-8-76.1, commonly known as Georgia's "seatbelt statute," which requires "[e]ach occupant of the front seat of a passenger vehicle" to "be restrained by a seat safety belt" "while such passenger vehicle is being operated on a public road, street, or highway of this state," OCGA § 40-8-76.1 (b), subject to exceptions laid out in OCGA § 40-8-76.1 (c). Among other things, OCGA § 40-8-76.1 restricts the use of evidence of a vehicle occupant's failure to wear a seat safety belt in a legal proceeding:

> The failure of an occupant of a motor vehicle to wear a seat safety belt in any seat of a motor vehicle which has a seat safety belt or belts shall not be considered evidence of negligence or causation, shall not otherwise be considered by the finder of fact on any question of liability of any person, corporation, or insurer, shall not be any basis for cancellation of coverage or increase in insurance rates, and shall not be evidence used to diminish any

recovery for damages arising out of the ownership, maintenance, occupancy, or operation of a motor vehicle.

OCGA § 40-8-76.1 (d). Before us now is a set of certified questions from the United States District Court for the Middle District of Georgia, all of which pertain to OCGA § 40-8-76.1 (d):

> Does OCGA § 40-8-76.1 (d) preclude a defendant in an action alleging defective restraint system design and/or negligent restraint system manufacture from producing evidence related to:
> (1) The existence of seatbelts in a vehicle as part of the vehicle's passenger restraint system; or
> (2) Evidence related to the seatbelt's design and compliance with applicable federal safety standards; or
> (3) An occupant's nonuse of a seatbelt as part of their defense?[1]

As explained more below, we conclude that OCGA § 40-8-76.1 (d) does not preclude a defendant in an action alleging defective restraint-system design or negligent restraint-system manufacture from producing evidence related to the existence of seatbelts in a vehicle as part of the vehicle's passenger restraint system. We further conclude that OCGA § 40-8-76.1 (d) does not preclude such

_____

[1] As noted below in footnote 2, the trial court initially certified a different set of questions to this Court.

2

defendants from producing evidence related to the seatbelt's design and compliance with applicable federal safety standards. Finally, we conclude that OCGA § 40-8-76.1 (d) precludes consideration of the failure of an occupant of a motor vehicle to wear a seatbelt for the purposes set forth in subsection (d), even as part of a defendant-manufacturer's defense.

1. *Background*

The facts recounted in the district court's certification order include the following: On March 27, 2020, a Jeep Wrangler struck the 2015 Ford SRW Super Duty Pickup truck that Casey Domingue was driving; his wife, Kristen, was a passenger. The resulting collision resulted in serious damage to both vehicles. During the collision, the dashboard airbag on the passenger side of the Domingues' truck did not deploy and Kristen's head hit the windshield, causing serious injury to her head, neck, and spine. The Domingues filed suit against Ford Motor Company ("Ford") in the United States District Court for the Middle District of Georgia, alleging negligence and "defective design and manufacture of the

3

subject airbag restraint system," and claiming personal injuries to Kristen and loss of consortium for Casey.

During discovery, the Domingues filed a motion in limine asking the district court to exclude from the scope of discovery and from trial "any evidence in this case, testimony or documentary, concerning the issue of whether Plaintiff Kristen Domingue or Plaintiff Casey Domingue were or were not wearing their seatbelt[s] at the time of the subject collision." Ford responded that "evidence unrelated to [the Domingues'] actual seat belt use falls outside [of OCGA § 40-8-76.1 (d)'s] exclusionary limits" and that the Domingues' "defect allegations and expert testimony in this case . . . opened the door to the admission of all seat belt evidence." Ford also contended that "[g]iven the interconnected designs of restraints and airbags, it is pragmatically impossible to try an alleged failed airbag deployment case[ ] without discussing the restraint system"; that "it would be impossible to conclude that a differently designed airbag would be safer, or would not be more harmful, without considering occupant seat belt use or nonuse"; and that OCGA § 40-

4

8-76.1 (d) "would be unconstitutional as applied, infringing upon Ford's substantive due process and equal protection rights under both the Georgia and United States Constitutions" if the district court denied Ford the "fundamental right to show that [Kristen] Domingue was not using the primary component of the restraint system," as the Domingues had requested.

The district court held a hearing on the Domingues' motion in limine. Afterward, Ford filed a "motion for certified question" to the district court. The district court then certified its own questions to this Court, which were different than the questions Ford requested, and denied Ford's motion as moot. On October 19, 2021, this Court "identified what may be a small but potentially significant scrivener's error in the first sentence of the certified question," struck the certified question from our docket, and invited the district court to "clarify its question and recertify the question to this Court as it sees fit."[2] On October 21, 2021, the district court certified to

---

[2] The district court originally certified the following set of questions to this Court on October 12, 2021:

5

this Court the set of questions set forth at the outset of this opinion. Oral argument was held on February 15, 2022.

2. *Analysis*

To answer the questions before us, we first look to the text of OCGA § 40-8-76.1 (d). See *Premier Health Care Invs., LLC v. UHS of Anchor, L.P.*, 310 Ga. 32, 39 (849 SE2d 441) (2020) ("A statute draws its meaning from its text.") (citation and punctuation omitted). "To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the

---

> Does OCGA § 40-8-76.1 (d) preclude a defendant in an action alleging defective *seatbelt* design and/or negligent *seatbelt* manufacture from producing evidence related to:
> > (1) The existence of seatbelts in a vehicle as part of the vehicle's passenger restraint system; or
> > (2) Evidence related to the seatbelt's design and compliance with applicable federal safety standards; or
> > (3) Other evidence related to seatbelts as long as the defendant does not mention occupant's use or nonuse of a seatbelt as part of their defense?
>
> (Emphasis supplied). The certified questions now before this Court refer to the vehicle's "restraint system" design and manufacture, as opposed to the vehicle's "seatbelt" design and manufacture.

English language would." Id. (citation and punctuation omitted).

(a) *Does OCGA § 40-8-76.1 (d) preclude a defendant in an action alleging defective restraint system design and/or negligent restraint system manufacture from producing evidence related to the existence of seatbelts in a vehicle as part of the vehicle's passenger restraint system?*

The Domingues contend that the answer to the first question is "yes" because, they say, OCGA § 40-8-76.1 (d) "is a comprehensive prohibition against the 'failure to wear a seatbelt' defense on any question of liability or diminution of damages," such that "the 'failure to wear a seatbelt' defense is not available to any party in a civil action of any nature" and there is "no remaining probative value" for evidence related to a vehicle being equipped with a seatbelt. To support their argument, the Domingues cite Georgia cases that have referenced the "legislative intent" or "legislative purpose" of OCGA § 40-8-76.1 (d) and that have excluded or placed broad restrictions on the consideration of evidence of a vehicle occupant's failure to wear a seatbelt. See, e.g., *King v. Davis*, 287 Ga. App. 715, 715-716 (652 SE2d 585) (2007) (stating that "the legislative intent of OCGA § 40-8-76.1 (d) was to prohibit the

7

admission of evidence that no seat belt was worn for all purposes" and holding that the trial court committed reversible error when it instructed the jury that it could "take into account evidence of the Kings' alleged failure to use an available seatbelt") (punctuation omitted); *Crosby v. Cooper Tire & Rubber Co.*, 240 Ga. App. 857, 863, 866 (524 SE2d 313) (1999) (stating that "the legislative intent of [OCGA § 40-8-76.1 (d)] was to prohibit the admission of evidence that no seat belt was worn for all purposes" and holding that the trial court did not err in "denying admission into evidence that the Crosbys were not wearing seat or safety belts at the time of the roll over"), rev'd on other grounds, 273 Ga. 454 (543 SE2d 21) (2001); *Denton v. DaimlerChrysler Corp.*, 645 FSupp.2d 1215, 1221-1222 (N.D. Ga. 2009) (stating that OCGA § 40-8-76.1 (d)'s "express legislative purpose" is to "provide that a failure to use seat safety belts may not be introduced into evidence in any civil action" and instructing the jury that the deceased vehicle occupant's "use or nonuse of a seat belt on the day of the accident may not be considered by [the jury] on the question of liability nor to reduce any recovery

8

for damages") (citation and punctuation omitted).

Ford, for its part, points to the text of OCGA § 40-8-76.1 (d) and responds that the "plain and unambiguous language of Georgia's seatbelt statute provides [a] straightforward and unequivocal" answer to this question: "No"—an answer with which amici curiae the Georgia Trial Lawyers Association ("GTLA") and the Product Liability Advisory Council ("PLAC") agree.[3] We also agree that the plain text of OCGA § 40-8-76.1 (d) answers the first certified question, and that the answer is "no."

The text of OCGA § 40-8-76.1 (d) does not purport to restrict consideration of *all* seatbelt-related evidence. The text makes clear that the restrictions OCGA § 40-8-76.1 (d) imposes on evidence pertaining to seatbelts—i.e., that they "shall not be considered

---

[3] GTLA contends that OCGA § 40-8-76.1 (d) "does not address the admissibility of all seatbelt-related evidence" but "excludes evidence of 'the failure of an occupant of a motor vehicle to wear a seat safety belt in any seat of a motor vehicle which has a seat safety belt or belts.'" PLAC contends that OCGA § 40-8-76.1 (d) "imposes limits only on evidence of the failure of an occupant of a motor vehicle to wear a seat belt to suggest fault on the part of the plaintiff." Amicus curiae the Georgia Defense Lawyers Association ("GDLA") offered its views about the third certified question, but did not provide analysis of the first two. We thank the amici for their helpful briefs.

9

evidence of negligence or causation," "shall not otherwise be considered by the finder of fact on any question of liability of any person, corporation, or insurer," "shall not be any basis for cancellation of coverage or increase in insurance rates," and "shall not be evidence used to diminish any recovery for damages"—apply only to "[t]he failure of an occupant of a motor vehicle to wear a seat safety belt in any seat of a motor vehicle which has a seat safety belt or belts." In other words, the statutory restrictions are all predicated on the "failure of an occupant of a motor vehicle to wear a seat safety belt." It follows that if that evidentiary predicate is not met, the restrictions outlined in OCGA § 40-8-76.1 (d) do not apply. Because "the existence of seatbelts in a vehicle" is something other than the "failure of an occupant of a motor vehicle to wear a seat safety belt," the predicate of OCGA § 40-8-76.1 (d) is not met, and OCGA § 40-8-76.1 (d) does not restrict use or consideration of that evidence.

The cases the Domingues cite do not hold otherwise. For example, the Court of Appeals in *King* reversed an instruction that

10

would have allowed the jury to consider the vehicle occupants' alleged failure to wear a seatbelt when considering damages— evidence that clearly falls within the ambit of OCGA § 40-8-76.1 (d)'s restrictions.  See *King*, 287 Ga. App. at 715-716.  Likewise, in *Crosby*, the Court of Appeals affirmed the trial court's exclusion of evidence that the vehicle occupants were not wearing seatbelts at the time of the crash at issue for, among other purposes, the "limited purpose[ ] of [ ] reduction of any damages"—evidence that also falls clearly within the ambit of OCGA § 40-8-76.1 (d)'s restrictions. See *Crosby*, 240 Ga. App. at 863-864, 866.  And although both cases apply OCGA § 40-8-76.1 (d) to restrict consideration of seatbelt evidence, neither *King* nor *Crosby* appears to grapple with a request to introduce the type of evidence at issue in the first certified question (the mere existence of seatbelts in a vehicle).  Thus, the holdings of *King* and *Crosby* do not answer the question at issue here.  Nor does *Denton*, 645 FSupp.2d at 1222, support the Domingues' argument.  There, the trial court allowed certain seatbelt evidence to be admitted, including evidence about "seat

11

belt[ ] function," but also instructed the jury not to consider evidence of the vehicle occupant's failure to wear a seatbelt. Id. at 1222.

The Domingues also point to these same three cases—*King*, *Crosby*, and *Denton*—as invoking the "legislative intent" or "legislative purpose" of OCGA § 40-8-76.1 (d), and argue that they stand for the proposition that seatbelt-related evidence should be broadly excluded. But that does not change our analysis, because those cases do no work in interpreting the text of the statute. Instead, they purport to divine a general "legislative intent" or "purpose" of the statute from the uncodified caption to the 1988 House Bill that enacted OCGA § 40-8-76.1 (d). See *Crosby*, 240 Ga. App. at 864, 866; *King*, 287 Ga. App. at 715-716; *Denton*, 645 FSupp.2d at 1221-1222. That caption, in turn, summarized OCGA § 40-8-76.1 (d) as "provid[ing] that a failure to use seat safety belts may not be introduced in evidence in any civil action and may not be used to diminish recovery of damages and shall not be a basis for cancellation of insurance coverage or an increase in insurance rates." See Ga. L. 1988, p. 31. But it is "fundamental that the

12

preamble or caption of an act is no part thereof and cannot control the plain meaning of the body of the act." *East Georgia Land & Dev. Co., LLC v. Baker*, 286 Ga. 551, 553 (690 SE2d 145) (2010) (citation and punctuation omitted). Cf. *Spalding County Bd. of Elections v. McCord*, 287 Ga. 835, 837 (700 SE2d 558) (2010) (noting that "[a]lthough a preamble is not a part of the act and therefore cannot control over its plain meaning, it may be considered as evidence of the meaning of an ambiguous, codified law").[4]

In sum: the text of OCGA § 40-8-76.1 (d) does not mention, let alone expressly restrict, evidence about the existence of seatbelts in

---

[4] It is also notable that OCGA § 40-8-76.1 (d) was amended in 1993 and 1999, and its uncodified caption was also revised in those years such that it no longer includes the phrase "may not be introduced in evidence in any civil action." See Ga. L. 1999, p. 276 ("[T]o provide that the failure to use a safety belt in a motor vehicle which has a safety belt or belts shall not be considered by a finder of fact evidence of negligence or causation and shall not be considered in determining liability or to diminish a recovery for damages."). But even if the wording of the caption had remained the same, the caption could not control the plain text set forth in OCGA § 40-8-76.1 (d). See *East Georgia Land & Dev. Co., LLC*, 286 Ga. at 553. The Court of Appeals' dicta in *Crosby*—which looks to the 1988 caption and characterizes the "legislative intent of the statute" as prohibiting "the admission of evidence that no seat belt was worn *for all purposes*," 240 Ga. App. at 864, 866 (emphasis supplied)— is especially problematic because the 1988 caption (like the text of the statute itself) did not contain the phrase "for all purposes." See Ga. L. 1988, p. 31.

13

a vehicle.[5] The statute therefore does not preclude introduction or consideration of such evidence at trial. We emphasize, however, that our conclusion is limited to the question of whether the statute *itself* precludes introduction or consideration of evidence related to the existence of seatbelts in a vehicle. We leave to the district court the determination of whether such evidence would be relevant and otherwise admissible under the Federal Rules of Evidence.

(b) *Does OCGA § 40-8-76.1 (d) preclude a defendant in an action alleging defective restraint system design and/or negligent restraint system manufacture from producing evidence related to the seatbelt's*

---

[5] We also note that the textual predicate for application of OCGA § 40-8-76.1 (d) is the "*failure* of an occupant of a motor vehicle to wear a seat safety belt"; the statute does not restrict consideration of seatbelt *use*. (Emphasis supplied.) Of course, trial courts may determine, based on the relevant rules of evidence and the facts of a particular case, that evidence of a vehicle occupant's seatbelt *use* is not relevant, is unfairly prejudicial, or is otherwise not admissible. Such determinations, however, are not mandated by the text of OCGA § 40-8-76.1 (d). Some federal courts appear to have concluded otherwise, but we need not address the rulings in those cases to answer the certified questions before us. See, e.g., *Denton*, 645 FSupp.2d at 1222 ("In short, Georgia's seat belt statute prohibits the jury's consideration of the *use* or nonuse of a seat belt for any purpose.") (emphasis supplied); *McCurdy v. Ford Motor Co.*, No. 1:04-cv-151-WLS, 2007 WL 121125 at *5 (M.D. Ga. Jan. 11, 2007) (stating that "the *use* or lack of use of seat belts still attempts to defeat the causation and damages elements of the tort in question, both of which are prohibited by Georgia law") (emphasis supplied); *Hockensmith v. Ford Motor Co.*, No. 1:01-cv-3645-GET, 2003 WL 25639639, at *11 (N.D. Ga. Apr. 17, 2003) (granting a motion in limine to "preclude any mention of [the vehicle occupant's] seatbelt *use* in front of the jury at any time") (emphasis supplied).

14

*design and compliance with applicable federal safety standards?*

The Domingues' primary argument with respect to the second certified question is that the "existence of seatbelts and their compliance with federal standards is totally irrelevant to anything in the case other than the alleged failure of [ ] Kristen Domingue to have worn that seatbelt," and that admitting such evidence would be "nothing more than a 'back door'" that would allow Ford to imply to the jury that Kristen Domingue was not wearing her seatbelt. But the Domingues' argument about the second certified question suffers from the same flaw as their argument about the first: it ignores the text of OCGA § 40-8-76.1 (d). As explained above, the evidentiary predicate for application of OCGA § 40-8-76.1 (d) is "[t]he failure of an occupant of a motor vehicle to wear a seat safety belt." OCGA § 40-8-76.1 (d) does not speak about, let alone purport to restrict, the introduction or consideration of evidence related to a seatbelt's design or evidence about federal safety standards. We answer the second certified question "no," again emphasizing that we conclude only that OCGA § 40-8-76.1 (d) itself does not preclude

15

introduction or consideration of evidence related to a seatbelt's design or evidence about federal safety standards. To the extent the Domingues complain that such evidence is not relevant in a design-defect case or that Ford may argue improper inferences from evidence admitted for proper purposes, the district court can determine, based on the evidence presented and arguments, whether such evidence and arguments would be admissible under the Federal Rules of Evidence and proper in this case.

(c) *Does OCGA § 40-8-76.1 (d) preclude a defendant in an action alleging defective restraint system design and/or negligent restraint system manufacture from producing evidence related to an occupant's nonuse of a seatbelt as part of their defense?*

To begin, we clarify that we interpret the third certified question as asking whether in this type of case—i.e., a case alleging defective restraint-system design or negligent restraint-system manufacture—OCGA § 40-8-76.1 (d) precludes consideration of evidence related to a motor vehicle occupant's failure to wear a seatbelt for the purposes set forth in subsection (d), even as part of

16

a defendant-manufacturer's defense.[6]  The text of OCGA § 40-8-76.1 (d) permits only one possible answer to this question: yes.  Indeed, the text of OCGA § 40-8-76.1 (d) does not limit its application to certain types of cases (such as a negligence case, personal injury case, manufacturing-defect case, or design-defect case) or to a certain party (plaintiff, defendant, or third party).  See *C.W. Matthews Contracting Co., Inc. v. Gover*, 263 Ga. 108, 110 (428 SE2d 796) (1993) (rejecting argument that OCGA § 40-8-76.1 (d) does not apply to negligence per se cases).  Nor does the text contain exceptions if the evidentiary predicate—the "failure of an occupant of a motor vehicle to wear a seat safety belt"—is at issue.  Because OCGA § 40-8-76.1 (d) precludes "[t]he failure of an occupant of a motor vehicle to wear a seat safety belt" from being "considered evidence of negligence or causation," and because the "failure of an occupant of a motor vehicle to wear a seat safety belt" "shall not

---

[6] The certified question asks whether OCGA § 40-8-76.1 (d) precludes the "product[ion]" of such evidence.  It is not clear what "production" means in this context, but the text of OCGA § 40-8-76.1 (d) does not reference (let alone expressly limit) the "production" of any evidence.

17

otherwise be considered by the finder of fact on any question of liability of any person, corporation, or insurer, . . . and shall not be evidence used to diminish any recovery for damages arising out of the ownership, maintenance, occupancy, or operation of a motor vehicle," OCGA § 40-8-76.1 (d) squarely precludes consideration of a motor vehicle occupant's nonuse of a seatbelt for those purposes—even as part of a defendant-manufacturer's defense.

Ford argues that this cannot be so, because excluding evidence of seatbelt usage in this particular type of design-defect case (i.e., an action alleging defective or negligent restraint-system design or manufacture) would render OCGA § 40-8-76.1 (d) unconstitutional as applied to Ford.[7] Specifically, Ford contends that such an

---

[7] Ford also argues that we should deviate from a straightforward reading of the statutory text because it produces "absurd" results. But the fact that an application of clear statutory text produces results that Ford or others may think are unfair or unreasonable does not render the statute nonsensical or "absurd." See *McKinney v. Fuciarelli*, 298 Ga. 873, 876 (785 SE2d 861) (2016) (citation and punctuation omitted). Additionally, Ford contends that interpreting OCGA § 40-8-76.1 (d) to "broadly exclude all mention or evidence of seatbelts" would render the statute unconstitutional as applied, but we have already explained in our answers to the first two certified questions that the text of OCGA § 40-8-76.1 (d) does not bar introduction or consideration of *all* evidence related to seatbelts. Ford does not contend that OCGA § 40-8-76.1 (d)

18

interpretation of the statute would violate Ford's due process and equal protection rights under both the United States and Georgia Constitutions.[8] Pretermitting whether each of the state and federal

is facially unconstitutional.

[8] Pointing to *C.W. Matthews Contracting Co.*, 263 Ga. at 109-110, the Domingues contend that this Court has already determined that OCGA § 40-8-76.1 (d) is constitutional, and specifically that it does not violate the due process provisions of the Georgia and United States Constitutions or the equal protection provision of the Georgia Constitution. There is no dispute that this Court in *C.W. Matthews* held that "OCGA § 40-8-76.1 does not violate due process for any of the reasons" the appellant in that case alleged, which appeared to be that the statute was "arbitrary and denie[d] *him* due process of law" under the Georgia and United States Constitutions. *C.W. Matthews*, 263 Ga. at 109-110 (emphasis supplied). There is also no dispute that we held that OCGA § 40-8-76.1, which we said "allow[s] appellees to introduce proof of their claim of negligence, but [denies] the opportunity to introduce proof that [the vehicle occupant] was negligent in not wearing her seat belt," did not violate the equal protection provision of the Georgia Constitution, and that the "statute does not deprive appellant of its 'right of access' to the courts in violation of 1983 Ga. Const., Art. I, Sec. I, Par. XII," or his "constitutional right to trial by jury, nor any other constitutional right complained of" in that case. Id. at 110 (citation omitted). But *C.W. Matthews* involved a driver's negligence suit against another driver and a construction company whose employees were directing traffic around the construction site where the collision occurred, see 263 Ga. at 108, and did not involve a products liability cause of action like the one here. And our determination that OCGA § 40-8-76.1 (d) did not violate the appellant's due process, equal protection, or other rights under the Georgia Constitution, the United States Constitution, or both—as applied in *C.W. Matthews*—does not necessarily control the as-applied constitutional challenges in this case. Finally, we note that this Court's holdings on matters of federal constitutional law are not binding on federal courts like the one that certified the questions to us in this case.

constitutional claims Ford raises in this appeal were adequately raised in the district court,[9] we decline Ford's request to determine whether OCGA § 40-8-76.1 (d) is unconstitutional as applied.

First, Ford asks this Court to invoke the canon of constitutional

---

[9] In Ford's response to the Domingues' motion in limine, it argued that if OCGA § 40-8-76.1 (d) were interpreted to exclude evidence of the failure of vehicle occupants to wear a seatbelt, then OCGA § 40-8-76.1 (d) would violate Ford's due process and equal protection rights under the Georgia and United States Constitutions. To support that argument, Ford cited *Schumacher v. City of Roswell*, 344 Ga. App. 135 (809 SE2d 262) (2017), for the general propositions that the "Georgia and United States Constitutions 'prohibit the state from depriving any person of life, liberty, or property, without due process of law,'" and that both Constitutions "guarantee procedural and substantive due process." Id. at 138. The Court of Appeals in *Schumacher* treated the due process provisions contained in the Georgia and United States Constitutions as coextensive. Ford also cited *City of Duluth v. Morgan*, 287 Ga. App. 322 (651 SE2d 475) (2007), to explain that "[s]ubstantive due process protects against 'government power arbitrarily and oppressively exercised,'" but that case did not involve a claim involving a provision of the Georgia Constitution. Id. at 324. Ford also cited Article I, Section I, Paragraph XII of the Georgia Constitution and argued that "[t]he Georgia Constitution is the same, if not broader," than the United States Constitution. But Ford did not specify which provisions of the United States or Georgia Constitution it was referencing, and Article I, Section I, Paragraph XII of the Georgia Constitution pertains to a person's right to represent himself or herself in Georgia courts—not to due process or equal protection. Finally, Ford argued that as applied, OCGA § 40-8-76.1 (d) violates Ford's constitutional right to present a full defense. But a careful reading of Ford's motion in the district court and its brief to this Court reveals that its argument related to presenting its defense is made as part of its due process and equal protection arguments, and does not appear to be a free-standing constitutional claim. With respect to all of its constitutional claims, Ford repeated verbatim in its brief before this Court the arguments it made before the trial court.

doubt to conclude that OCGA § 40-8-76.1 (d) is unconstitutional as applied. Under that canon of statutory construction, "if a statute is susceptible of more than one meaning, one of which is constitutional and the other not, we interpret the statute as being consistent with the Constitution." *Premier Health Care Invs.*, 310 Ga. at 48 (citation and punctuation omitted). But we cannot rely on that canon here, because—as explained above—the text of OCGA § 40-8-76.1 (d) is clear and is not susceptible of more than one meaning. See *Crowder v. State of Ga.*, 309 Ga. 66, 73 n.8 (844 SE2d 806) (2020) (explaining that although "[i]n some cases, the canon of constitutional avoidance allows courts to choose between competing plausible interpretations of a statutory text, resting on the reasonable presumption that the legislature did not intend the alternative which raises serious constitutional doubts," that canon cannot be relied upon to avoid a "potential constitutional issue" when "we can identify only one plausible interpretation of [a] statute") (citation and punctuation omitted). Because there are not "competing plausible interpretations of [the] statutory text," the canon of constitutional

21

doubt does not apply.  Id. (citation and punctuation omitted).[10]

Second, it is not clear that any of Ford's constitutional claims—even if properly raised in the district court—are ripe for review.  To that end, the district court certified questions from a pre-trial posture and at a point when discovery has barely begun.  But an as-applied constitutional challenge like this one will require Ford to show (among other things) that the failure-to-wear-a-seatbelt evidence it seeks to introduce in this case is necessary to its defense.  That is an inherently fact-specific theory that requires more factual development than has occurred at this early stage of litigation.

---

[10] In its amicus brief, the GDLA asks this Court to recognize a "judicial exception" to OCGA § 40-8-76.1 (d) in "product liability action[s] involving vehicle crashworthiness claims"—i.e., in cases like this one that involve allegations that a vehicle's restraint-system design or manufacture is defective.  To that end, GDLA contends that this Court historically has "crafted judicial exceptions to Georgia statutes," including both constitutional and equitable exceptions.  To the extent GDLA's request can be viewed as one for this Court to invoke the canon of constitutional doubt, that request fails for the reasons explained above.  To the extent GDLA's request for an "equitable exception" is a request for this Court to ignore or rewrite a statute that was duly enacted by the General Assembly, we reject it.  See Ga. Const. of 1983, Art. I, Sec. II, Par. III ("The legislative, judicial, and executive powers shall forever remain separate and distinct.").  See also *Star Residential, LLC v. Hernandez*, 311 Ga. 784, 790 (860 SE2d 726) (2021) ("Under our system of separation of powers this Court does not have the authority to rewrite statutes.") (citation and punctuation omitted).

22

Moreover, after this Court answers the certified questions, the district court could conclude that the evidence the parties seek to proffer in this case is inadmissible for any number of reasons not related to OCGA § 40-8-76.1 (d), which could make consideration of the constitutionality of OCGA § 40-8-76.1 (d) unnecessary. See *Scoville v. Calhoun*, 76 Ga. 263, 269 (1886) (it is our practice to "[g]iv[e] the benefit of doubts to the co-ordinate branches of government" and "never decide laws unconstitutional, if cases can be otherwise adjudicated"). See also *Deal v. Coleman*, 294 Ga. 170, 171 n.7 (751 SE2d 337) (2013). Finally, Ford has claimed violations under both the Georgia and United States Constitutions. If the district court were to conclude—based on the particular facts and circumstances of this case—that OCGA § 40-8-76.1 (d) violates the United States Constitution as applied to Ford, that conclusion could moot the Georgia constitutional questions Ford has raised. And given that there are potential federal constitutional law questions at issue in the pending federal case, we are loath to opine on questions of state constitutional law when the federal court that

23

certified the questions before us did not expressly ask us to do so.

To be sure, some of us have serious concerns about the constitutionality of a statute that strips from a defendant the ability to present evidence that could be critical to its ability to present a defense of a product it designs and manufactures—including but not limited to being prevented from making arguments related to proximate cause and risk-utility factors[11]—which may occur if a defendant-manufacturer is precluded from raising in a product-liability case about a motor vehicle all (or almost all) evidence related to a vehicle occupant's failure to wear a seatbelt.  But for the reasons explained above, we believe the constitutional questions are not properly presented to this Court for resolution at this time.[12]

*Certified questions answered.  All the Justices concur.*

---

[11] See, e.g., *Banks v. ICI Americas, Inc.*, 264 Ga. 732, 736 n.6 (450 SE2d 671) (1994) (providing examples of risk-utility factors the trier of fact may consider in design-defect cases, which include "the user's ability to avoid danger" and "the collateral safety of a feature other than the one that harmed the plaintiff").

[12] We remind Ford that the district court may consider any constitutional questions Ford properly raises in this litigation, and any appeal from the trial court's rulings on such questions would be filed in the United States Court of Appeals for the Eleventh Circuit—not in this Court.

Decided June 22, 2022.

Certified questions from the United States District Court for the Middle District of Georgia.

*Webster Law Group, Craig A. Webster*, for appellants.

*Watson Spence, Michael R. Boorman, Evan E. Smith IV, Philip A. Henderson; Jones Day, Brian C. Lea; Huie Fernambucq & Stewart, Paul F. Malek, D. Alan Thomas; Thompson Coe Cousins & Irons, Michael W. Eady*, for appellee.

*Hasty Pope Davies, Jonathan A. Pope; Cannella Snyder, Robert H. Snyder, Jr., Rory A. Weeks; Beasley Allen Crow Methvin Portis & Miles, Alyssa B. Baskam; Nelson Mullins Riley & Scarborough, Richard B. North, Jr., Alex G. Pisciarino; Weinberg Wheeler Hudgins Gunn & Dial, Jonathan R. Friedman, Gary J. Toman*, amici curiae.